Wayman KAUA, Petitioner,

v.

Clayton FRANK, Warden, Halawa Correctional Center, Respondent.

Civ. No. 03–00432 SOM/BMK.

United States District Court, D. Hawai'i.

Dec. 9, 2004.

Peter Wolff, Jr., Federal Defender, Office of the Federal Public Defender, Honolulu, HI, Attorney for Petitioner.

Loren J. Thomas, Office of the Prosecuting Attorney, Honolulu, HI, Attorneys for Respondent.

*ORDER GRANTING PETITIONER'S 28 U.S.C. § 2254 PETITION TO VACATE EXTENDED SENTENCE*

MOLLWAY, District Judge.

## I. INTRODUCTION.

Petitioner Wayman Kaua challenges an extended sentence imposed on him by a state judge pursuant to the state law in effect at the time he was sentenced. Following the imposition of his sentence, but before his judgment of conviction and sentence became final, the United States Supreme Court decided *Apprendi v. New*

*Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). After the Hawaii Supreme Court affirmed his judgment of conviction and sentence, Kaua moved to correct his sentence based on *Apprendi.* That motion was denied by the state trial court, and that denial was affirmed by the Hawaii Supreme Court.

This § 2254 petition presents the question of whether Kaua's extended sentence of incarceration violates *Apprendi.* This court concludes that Kaua's extended sentence clearly violates *Apprendi,* and that the extended sentence was based on an unreasonable application of *Apprendi.* This court therefore grants Kaua's § 2254 petition.

## II. *BACKGROUND.*

The facts of this case are undisputed and have been set forth in *Hawaii v. Kaua,* 102 Hawai'i 1, 72 P.3d 473 (2003). On March 3, 1999, Kaua was indicted in a state court in connection with a hostage stand-off that had occurred when Honolulu Police Department officers attempted to execute a warrant for his arrest on October 29, 1999. Charges arising out of that hostage stand-off included: (1) attempted murder in the first degree, in violation of Haw.Rev.Stat. §§ 705–500 and 707–701(1)(a) (1993) (Count I); (2) attempted murder in the first degree, in violation of Haw.Rev.Stat. §§ 705–500 and 707–701(1)(b) (1993) (Counts II–IV); (3) kidnapping, in violation of Haw.Rev.Stat. § 707–720(1)(b) (1993) (Count V); (4) kidnapping, in violation of Haw.Rev.Stat. § 707–720(1)(e) (1993) (Count VI); (5) kidnapping, in violation of Haw.Rev.Stat. § 707–720(1)(f) (1993) (Count VII); (6) terroristic threatening in the first degree, in violation of Haw.Rev.Stat. § 707–716(1)(d) (1993) (Count VIII); (7) possession of any firearm or ammunition by a person convicted of certain crimes, in violation of Haw.Rev.Stat. §§ 134–7(b) and (h) (Supp. 1999) (Count IX); (8) reckless endangering in the first degree, in violation of Haw.Rev. Stat. § 707–713 (1993) (Counts X–XII); and (9) carrying or use of a firearm in the commission of a separate felony, in violation of Haw.Rev.Stat. §§ 134–6(a) and (e) (Supp.1999) (Count XIII). *See Kaua,* 102 Hawai'i at 2–3, 72 P.3d at 474–75.

After a trial, the state court jury returned a verdict on November 22, 1999, acquitting Kaua of the charge of attempted murder in the first degree (Count I), but finding him guilty of:

(1) the lesser included offense of attempted assault in the first degree (Count II); (2) the lesser included offense of reckless endangering in the first degree (Count III); (3) the lesser included offense of attempted manslaughter based upon extreme mental or emotional disturbance (EMED) (Count IV); (4) kidnapping (Count V); (5) the lesser included offense of unlawful imprisonment in the second degree (Count VI); (6) kidnapping (Count VII); (7) terroristic threatening in the first degree (Count VIII); (8) possession of any firearm or ammunition by a person convicted of certain crimes (Count IX); (9) reckless endangering in the first degree (Counts X–XII); and (10) carrying or use of a firearm in the commission of a separate felony (Count XIII).

*Kaua,* 102 Hawai'i at 3, 72 P.3d at 475.

It is undisputed that the attempted manslaughter and one of the firearm-related offenses were class A felonies. Under Haw.Rev.Stat. § 706–659, a person who has been convicted of a class A felony "shall be sentenced to an indeterminate term of imprisonment of twenty years without the possibility of suspension of sentence or probation."

It is also undisputed that the first-degree assault and another one of the fire-

arm-related offenses were class B felonies. The first-degree terroristic threatening and the four counts of reckless endangering offenses were class C felonies. Under Haw.Rev.Stat. § 706–660, those class B and C felony convictions subjected Kaua to indeterminate terms of imprisonment of ten and five years, respectively.

Rather than seeking a sentence in accordance with sections 706–659 and 706–660, the prosecution filed a motion for extended terms of imprisonment pursuant to Haw. Rev.Stat. § 706–662(4) (Supp.1999). At that time, section 706–662(4) provided:

A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:

. . . . .

(4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or

(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed forty years if the extended term imposed is for a class A felony.

Kaua, 102 Hawai'i at 4 n. 1, 72 P.3d at 476 n. 1 (quoting Haw.Rev.Stat. § 706–662(4) (Supp.1999)).

After a hearing, the sentencing judge granted the prosecution's motion for an extended sentence. Kaua, 102 Hawai'i at 4, 72 P.3d at 476. In 1993, Kaua had been sentenced to a ten-year term of imprisonment for the offenses of possession of a firearm and possession of ammunition by a person convicted of certain crimes. Id. at 4 n. 3, 72 P.3d at 476 n. 3. The court therefore found that Kaua qualified for an extended sentence as a multiple offender. Id. at 5, 72 P.3d at 477.

The sentencing judge then turned to what it viewed as "discretionary matters," including whether an extended term of imprisonment was necessary for the protection of the public. Kaua, 102 Hawai'i at 4–5, 72 P.3d at 476–77. Based on matters discussed at the February 1, 2000, hearing, the sentencing judge stated:

Defendant's history suggests the following; from an early age, alcoholism, substance abuse. And the substance abuse is of great concern, because as a youth, it went from marijuana to cocaine, opiates, and then crystal methamphetamine. The use sometimes was sporadic. But when [Kaua] abused the drugs, it was very severe. And undoubtedly, in the days or weeks surrounding these offenses and perhaps shortly before these offenses, [Kaua] was abusing drugs in the court's judgment.

Now, his history also suggests assaultive behavior, threatening behavior. We have abuse of household member, terroristic threatening, other incidents which have been reported or mentioned by the prosecution. Basically, it's the court's conclusion that while under the influence or while under extreme stress, [Kaua] is unable to control his behavior. And that impairment has brought about assaultive behavior as well as threatening behavior.

Of more concern is . . . his access to firearms. Before these incidents, [Kaua] did have a firearm conviction. And reportedly on other occasions, he

resorted to use of firearms, although in one incident, I understand that it's been disputed. And, of course, in the incidents before the court, [Kaua] used an assault rifle.

. . . . .

.... Certainly[,] he had the assistance of his spouse in identifying who these people were outside and [in] what capacity they were out there. It's not only the police officer who could have been shot, but it could have been other people. And I understand that there were children in the vicinity. He may not have intended to hit any children. But in the manner that the rifle was being fired, there's also a strong ... possibility that minors could have been hurt as well as other innocent bystanders.

Basically, [Kaua], I believe when I look at the factors and consider his character, his history, his attitude, and the need for a structured environment, I believe that it's necessary for the protection of the public to impose the extended terms....

*Kaua,* 102 Hawai'i at 5, 72 P.3d at 477.

The court then sentenced Kaua as follows:

(1) for the lesser included offense of attempted assault in the first degree (Count II), an extended indeterminate maximum twenty-year prison term, subject to mandatory minimum terms of three years and four months as a repeat offender and ten years for the use of a semiautomatic firearm; (2) for the offense of reckless endangering in the first degree (Counts III, X, XI, and XII), extended indeterminate maximum ten-year prison terms as to each of Counts III, X, XI, and XII, subject to mandatory minimum terms of one year and eight months as a repeat offender and five years for the use of a semiautomatic firearm; (3) for the lesser included of-

fense of attempted manslaughter based upon EMED (Count IV), an extended indeterminate maximum term of life imprisonment with the possibility of parole, subject to mandatory minimum terms of six years and eights months as a repeat offender and fifteen years for the use of a semiautomatic firearm; (4) for the offense of terroristic threatening in the first degree (Count VIII), an extended indeterminate maximum ten-year prison term, subject to mandatory minimum terms of one year and eight months as a repeat offender and five years for the use of a semiautomatic firearm; (5) for the offense of possession of any firearm or ammunition by a person convicted of certain crimes (Count IX), an extended indeterminate maximum twenty-year prison term, subject to a mandatory minimum term of three years and four months as a repeat offender; and (6) for the offense of carrying or use of a firearm in the commission of a separate offense (Count XIII), an extended indeterminate maximum term of life imprisonment with the possibility of parole, subject to a mandatory minimum term of six years and eight months as a repeat offender. The circuit court further ruled that the six terms were to run concurrently with each other but consecutively to the sentence in Cr. No. 90–1996.

*Kaua,* 102 Hawai'i at 5–6, 72 P.3d at 477–78. This sentence complied with governing Hawaii appellate decisions in effect at the time.

On February 28, 2000, Kaua filed a timely notice of appeal. On May 1, 2001, the Hawaii Supreme Court issued a summary disposition order that affirmed the trial court's judgment of conviction and sentence. *Kaua,* 102 Hawai'i at 6, 72 P.3d at 478.

On June 26, 2000, after Kaua had filed his direct appeal but before the Hawaii Supreme Court had issued its summary disposition of Kaua's direct appeal, the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Because Kaua's direct appeal was still pending when *Apprendi* was decided, the new rule announced in *Apprendi* applied to Kaua's case on direct appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final"); *United States v. Sanchez–Cervantes*, 282 F.3d 664, 665 (9th Cir.2002) (stating that "the new rule of criminal procedure announced in *Apprendi* does not apply retroactively on initial collateral review"); *Panoke v. United States*, 2001 WL 46941, *2 (D.Hawaii Jan 5, 2001) ("The decision in *Apprendi* definitively announced a new rule of constitutional law.").[1] Nevertheless, *Apprendi* issues appear not to have been briefed to or expressly addressed by the Hawaii Supreme Court in Kaua's direct appeal of his sentence.

On March 13, 2002, pursuant to Rule 35 of the Hawaii Rules of Penal Procedure, Kaua filed a motion with the trial court ("Rule 35 court") for correction of his sentence based on *Apprendi*. The Rule 35 court denied that Rule 35 motion on May 6, 2002. In denying the motion, the Rule 35 court found that Kaua had stipulated to the fact that he was being sentenced for two or more felonies and had been under a sentence of imprisonment for another felony. The Rule 35 court also noted that the sentencing court had "made specific findings justifying the conclusion that an extended term of imprisonment was necessary for the protection of the public." These findings included Kaua's "history of substance abuse, his assaultive and threatening behavior, access to firearms, [Kaua's] inability to control his behavior under extreme stress, and the severe trauma [Kaua's] behavior caused the victim." *Kaua*, 102 Hawai'i at 6–7, 72 P.3d at 478–79.

On June 4, 2002, Kaua appealed the denial of his Rule 35 motion to correct illegal sentence. The Hawaii Supreme Court affirmed the Rule 35 court in a reported decision on July 8, 2003. *See Kaua*, 102 Hawai'i at 1, 72 P.3d at 473. In the interim, on June 24, 2002, the United States Supreme Court decided *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which applied what the Supreme Court had clearly explained in *Apprendi*.

## III. ANALYSIS:

### A. Kaua Exhausted His State Court Remedies.

 Before filing the present petition, Kaua was required to exhaust his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement included *Apprendi* issues. While retroactive application of *Apprendi* to initial petitions for collateral review is barred, *see United States v. Sanchez–Cervantes*, 282 F.3d 664, 667 (9th Cir.2002), that bar does not apply here. That is because retroactive application of a law occurs only if the new law is applied to a matter in which a judgment was final before adoption of the new law. *See Caspari*

---

1. Because *Apprendi's* new rule was announced before Kaua's state court judgment became final, the court is not faced with the issue of whether *Apprendi* applies to a collateral review of Kaua's judgment. *See Teague v. Lane*, 489 U.S. 288, 310–13, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

*v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (a judgment is not final for purposes of retroactivity analysis until direct appeals have been exhausted and the time for filing a certiorari petition has expired or, if a certiorari petition is filed, certiorari proceedings have concluded). Because Kaua's direct appeal had not been decided before *Apprendi* was decided, Kaua's sentence was not final when *Apprendi* was decided. Application of *Apprendi* to Kaua's case is therefore not a retroactive application. *See Griffith,* 479 U.S. at 328, 107 S.Ct. 708.

■ Although Kaua could have, but did not, raise *Apprendi* in the direct appeal of his sentence to the Hawaii Supreme Court, he did raise *Apprendi* in his Rule 35 motion and in the appeal of the denial of that motion. The Hawaii Supreme Court addressed the merits of Kaua's *Apprendi* claim in the appeal of the denial of his Rule 35 motion. It is unclear, however, on what ground the Hawaii Supreme Court reached the merits of Kaua's *Apprendi* claim. Either the Hawaii Supreme Court addressed the claim because *Apprendi* had

been decided during the pendency of Kaua's direct appeal, meaning that its application was not a retroactive application on collateral review, or the Hawaii Supreme Court was relying on the provision in Rule 35 allowing a motion to correct an illegal sentence "at any time" and thereby permitting an *Apprendi* issue that had not been argued on Kaua's direct appeal.[2]

The State argues in its supplemental brief that Kaua "should not be permitted to now raise" the *Apprendi* argument because he failed to raise it in his direct appeal.[3] That argument is unpersuasive. By the time the Hawaii Supreme Court addressed the *Apprendi* issue on July 8, 2003, Rules 35 and 40 of the Hawaii Rules of Penal Procedure had been amended. As amended, a Rule 35 motion brought more than 90 days after a sentence was imposed was governed by Rule 40 of the Hawaii Rules of Penal Procedure. The amended Rule 40(a)(3) clearly stated that a motion to correct an illegal sentence was not waived when a petitioner failed to raise the issue of the allegedly illegal sentence before the trial court or on appeal.[4]

2. Proper exhaustion of state court remedies occurred given the following circumstances: (a) Kaua could have raised Apprendi on direct review because *Apprendi* had been decided before Kaua's judgment of conviction and sentence became final; (2) the issue was raised and addressed for the first time in a Rule 35 motion and on appeal of the denial of that motion; and (3) the State has failed to articulate any exhaustion argument based on § 2254(b)(1)(A).

3. This argument is related to but slightly different from an argument of complete failure to exhaust state court remedies under § 2254(b)(1)(A). The State is not arguing here that Kaua's appeal of the denial of his Rule 35 motion was insufficient to exhaust his state court remedies for purposes of § 2254(b)(1)(A). Instead, the State appears to be arguing in essence that, by failing to raise an issue on direct appeal, Kaua waived the right to raise that issue on a Rule 35

motion or under § 2254. No law supports this argument or any procedural default argument. *See Carter v. Giurbino,* 385 F.3d 1194, 1196–97 (9th Cir.2004).

4. Before the amendments became effective on July 1, 2003, Rule 40(a)(3) provided that an issue was waived

if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.

*See* Order Amending the Hawaii Rules of Penal Procedure (April 25, 2003); *Reiger v. Christensen,* 789 F.2d 1425, 1427 (9th Cir. 1986) (noting that, under Rule 40(a)(3) of the

Nor does § 2254 provide that Kaua waived any *Apprendi* argument. In *Reiger v. Christensen,* 789 F.2d 1425, 1427 (9th Cir.1986), the Ninth Circuit stated, "If the habeas petitioner's claim was not presented to the state court on direct appeal, state collateral remedies must be exhausted." *Accord Sweet v. Cupp,* 640 F.2d 233, 235–36 (9th Cir.1981). The Ninth Circuit thus implied that a claim not raised on direct appeal could be raised in a state collateral proceeding. This typically happens with, for example, ineffective assistance of counsel claims. Because Kaua exhausted his state collateral remedies, he cannot be said to have waived his *Apprendi* argument for purposes of his § 2254 petition.[5]

**B.** *The Hawaii Supreme Court's Decision was Contrary to, as well as an Unreasonable Application of, Clearly Established Federal Law, as Determined by the United States Supreme Court.*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), Kaua requests relief from the extended sentence imposed on him. The AEDPA imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy,* 521 U.S. 320, 334, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir.), *cert. denied,* 540 U.S. 968, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003). Under § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Kaua bases his petition on § 2254(d)(1).

For purposes of § 2254(d)(1), a state court decision is "contrary to ... clearly established Federal law, as determined by the Supreme Court," when "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *accord Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (" 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the

Hawaii Rules of Penal Procedure before the amendment, the failure to raise an issue on direct appeal barred state collateral relief based on that issue). The Hawaii Supreme Court, which considered Kaua's *Apprendi* issue in his state collateral proceeding, appears to have applied the amended Rule 40(a)(3), which states that claims of illegal sentence are not waived by a failure to raise them on direct appeal.

**5.** The State does not contend that § 2244(d)(1)'s one-year statute of limitation bars Kaua's petition, presumably because that limitation period was tolled during the pendency of Kaua's Rule 35 motion and appeal of the denial of that motion. This court is therefore not faced with the issue of whether a petition would be barred under § 2244(d)(1) if a Rule 35 motion were brought in state court more than a year after the judgment of conviction and sentence became final.

time the state court renders its decision"); *Clark*, 331 F.3d at 1067 ("A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.").

A state court decision is "an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" when "the state court identifies the correct governing legal rule from [Supreme Court] cases, but unreasonably applies it to the facts of the particular case," or when "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." [6] *Williams*, 529 U.S. at 407, 120 S.Ct. 1495; *see also Clark*, 331 F.3d at 1067. The "unreasonable application" clause "requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Lockyer*, 538 U.S. at 75, 123 S.Ct. 1166; *accord Himes v. Thompson*, 336 F.3d 848, 852–53 (9th Cir.2003); *Clark*, 331 F.3d at 1068.

■ Based on *Apprendi*, Kaua argues that the extended sentence he received was contrary to clearly established federal law, as determined by the Supreme Court

of the United States, and that it was an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. This court agrees.

In *Apprendi*, the Supreme Court examined a New Jersey law that allowed a judge to enhance a sentence beyond the statutory maximum sentence for a crime when the judge found by a mere preponderance of the evidence that the crime was committed with the purpose of intimidating an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity. *Apprendi*, 530 U.S. at 468–69, 120 S.Ct. 2348. The Supreme Court found that New Jersey law unconstitutional because it removed from the jury the assessment of facts that increased the prescribed range of penalties to which a criminal defendant was exposed. *Id.* at 490, 497, 120 S.Ct. 2348. The Supreme Court stated that such facts had to be established by proof beyond a reasonable doubt, noting that it "is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Id.* at 490, 120 S.Ct. 2348. Accordingly, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." [7] *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

6. "While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark*, 331 F.3d at 1069.

7. The Supreme Court exempted "prior convictions" from the *Apprendi* requirements,

reasoning that, with respect to these previous convictions, defendants have already received the requisite procedural safeguards. *See Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348. This reasoning was consistent with the Supreme Court's earlier decision in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), in which the Court held that recidivism was a traditional basis for increasing an offender's sentence:

The holding of *Apprendi* applies both to elements of a crime and sentencing factors. "[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348.

The Supreme Court limited its holding in *Apprendi* to cases in which the statutory range of punishment was exceeded. *See Apprendi,* 530 U.S. at 481, 120 S.Ct. 2348 ("nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute") and at 487 n. 13 ("We do not overrule *McMillan.* We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict.").[8]

Before the Supreme Court decided *Apprendi,* the Hawaii Supreme Court had examined Hawaii's extended sentence law, found at section 706–662 of the Hawaii Revised Statutes. *See State v. Schroeder,* 76 Hawai'i 517, 880 P.2d 192 (Haw.1994). The Hawaii Supreme Court had ruled that each of the subsections of section 706–662 required the trial court to conduct a two-step process. The first step required the trial court to determine whether a defendant was within the "class of offenders to which the particular subsection applies." *Id.* at 527, 880 P.2d at 202. If the trial court determined that a defendant was included in the "class of offenders," the trial court could determine whether the defendant's commitment was necessary for the protection of the public using the procedural standards "applicable to ordinary sentencing." *Id.* at 528, 880 P.2d at 203. The Hawaii Supreme Court later explained that, "[u]nder ordinary sentencing procedures, the court is afforded wide latitude in the selection of penalties from those prescribed and in the determination of their severity." *State v. Okumura,* 78 Hawai'i 383, 413, 894 P.2d 80, 110 (Haw.1995). So that the trial court's "protection of the public" determination could be meaningfully reviewed on appeal, trial courts were required to articulate findings of fact supporting that determination. *Id.* The judge who sentenced Kaua did exactly what was required by *Schroeder* and *Okumura.*

In *State v. Carvalho,* 101 Hawai'i 97, 63 P.3d 405 (Haw.App.2002), a post-*Apprendi* case, the Intermediate Court of Appeals for the State of Hawaii ("ICA") sought to reconcile the Hawaii Supreme Court's pre-*Apprendi* decision in *Schroeder* with *Apprendi.* The ICA reviewed the application of section 706–662(4), the very subsection at issue in this case. Relying on that statute, the sentencing judge had imposed an extended sentence. The ICA recognized that a sentencing judge's first inquiry in considering an extended sentence relates to the defendant's prior felony convictions. *Apprendi* does not require prior convictions to be found by a jury to support imposition of a penalty beyond that

---

[T]he court said long ago that a State need *not* allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was necessary to bring the case within the statute.
*Almendarez–Torres,* 523 U.S. at 243, 118 S.Ct. 1219.

8. *McMillan v. Pennsylvania,* 477 U.S. 79, 81, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), upheld a Pennsylvania statute that subjected a person convicted of certain enumerated felonies to a mandatory minimum sentence of five years if the sentencing judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense.

otherwise prescribed by statute. The ICA concluded that it was just such a finding of prior felony convictions that had exposed the defendant in *Carvalho* to the extended term sentence. Put another way, the ICA ruled that the finding of the defendant's prior felony convictions established the statutory range for the defendant's sentence—an enhanced range. *Carvalho*, 101 Hawai'i at 111, 63 P.3d at 419.

The ICA then ruled that the sentencing court's further determination that a defendant's incarceration was necessary for the protection of the public was merely an exercise of the court's discretion to impose a sentence within the extended range. The ICA therefore held that *Apprendi* was not applicable to the determination of whether the defendant's incarceration was necessary for the protection of the public because that fact did not increase the penalty for a crime beyond the prescribed statutory maximum. *Id.*

This court is compelled to conclude that, in *Carvalho*, the ICA took a wrong turn. The *Apprendi* issue presented in *Carvalho* was one of first impression for Hawaii's appellate courts, but it had been addressed by the appellate courts of other jurisdictions. The ICA relied heavily on the decision by the Court of Appeals of New York in *People v. Rosen*, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844, *cert. denied*, 534 U.S. 899, 122 S.Ct. 224, 151 L.Ed.2d 160 (2001). *Rosen* addressed a New York statute very much like the extended sentence statute in issue in *Carvalho*. New York's Court of Appeals held that it was the defendant's prior felony convictions alone that exposed the defendant to an extended sentence, notwithstanding the

statutory requirement that the sentencing court also review the defendant's history and character and the nature and circumstances of the crime in deciding whether to impose an extended term. The *Rosen* decision characterized the inquiry into the defendant's history and character and the nature and circumstances of the crime as the fulfillment by the sentencing court of its traditional role of determining the appropriate sentence within the statutory range, which was already extended in light of the prior convictions. The New York court then concluded that the extended sentence presented no *Apprendi* violation.

This court agrees with the ICA that *Carvalho* presented a situation that, for *Apprendi* purposes, was indistinguishable from *Rosen*. But in relying on the Court of Appeals of New York, Hawaii's ICA was relying on a case that clearly contravenes the dictates of *Apprendi*.[9] The ICA was mistakenly diverted by *Rosen* from applying *Apprendi*.

The Hawaii Supreme Court initially granted a writ of certiorari to review the ICA's decision in *Carvalho*, *see State v. Carvalho*, 100 Hawai'i 295, 59 P.3d 930 (2002), but the writ was later dismissed, *see State v. Carvalho*, 101 Hawai'i 233, 65 P.3d 180 (2003). When Kaua appealed from the denial of his Rule 35 motion, the Hawaii Supreme Court, having earlier affirmed Kaua's sentence on direct appeal, decided to keep Kaua's Rule 35 appeal itself rather than exercise its discretion to refer it to the ICA. *See* Haw. R.App. P. 31. Not discerning the error in *Carvalho*, the Hawaii Supreme Court then applied *Carvalho* in determining that Kaua's extended sentence did not violate *Apprendi*. *See*

---

9. Thus, in *Brown v. Greiner*, 258 F.Supp.2d 68 (E.D.N.Y.2003), a habeas petition similar to the one Kaua brings here, a federal court in New York noted that *Rosen* was wrongly decided. That federal court stated, "I have no difficulty concluding that *Rosen's* conclusion is opposite to that reached by the Supreme Court in *Apprendi* on a question of law." *Id.* at 90.

*Kaua,* 102 Hawai'i at 12–13, 72 P.3d at 484–85.

The Hawaii Supreme Court explained that the finding that Kaua was a multiple offender fell outside the scope of *Apprendi,* like any finding based solely on a prior conviction. *See id.* at 13, 72 P.3d at 485. That multiple offender status was undisputed, as Kaua himself stipulated to his prior record. *Id.* at 13, 72 P.3d at 485. Applying *Carvalho,* the Hawaii Supreme Court reasoned that it was only Kaua's multiple offender status that had exposed him to the extended sentence range. According to the Hawaii Supreme Court, the sentencing court's determination that Kaua's incarceration was necessary for the protection of the public was a mere offshoot of the finding that Kaua was a multiple offender.

The Hawaii Supreme Court noted that the facts establishing the need to protect the public were not "intrinsic" to the crimes charged; that is, they were not "contemporaneous with, and enmeshed in, the statutory elements of the proscribed offense." *Id.* at 11, 72 P.3d at 483 (quoting *State v. Tafoya,* 91 Hawai'i 261, 271, 982 P.2d 890, 900 (1999)). In contrast to "intrinsic" facts, "extrinsic" facts such as those establishing a need to protect the public need not, according to the Hawaii Supreme Court, be alleged in the indictment and determined by the trier of fact. *Id.* at 10, 72 P.3d at 482. Thus, the court upheld the sentencing judge's determination of "extrinsic" facts and the resulting extended sentence.

■ In considering whether the *Kaua* decision contravenes *Apprendi,* this court confines itself to examining the grounds on which the Hawaii Supreme Court held that Kaua's sentence survived *Apprendi.* This court may not, on this § 2254 petition, justify the Hawaii Supreme Court's ruling on the basis of alternative grounds that the

Hawaii Supreme Court could have, but did not, articulate. *See Van Lynn v. Farmon,* 347 F.3d 735, 737 (9th Cir.2003).

The *Kaua* decision's reading of *Apprendi* flies in the face of the actual language of *Apprendi,* especially as that language has been construed in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This court recognizes that, while *Ring* was decided before the Hawaii Supreme Court ruled on Kaua's Rule 35 appeal, *Ring* had not yet been decided when the Hawaii Supreme Court ruled on Kaua's direct appeal from his sentence. This means that Kaua's sentence could not be vacated via a habeas petition based on *Ring* alone. *See Schriro v. Summerlin,* ─ U.S. ──, ──, 124 S.Ct. 2519, 2526, 159 L.Ed.2d 442 (2004) ("*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review."); *Teague,* 489 U.S. at 310–13, 109 S.Ct. 1060. However, nothing prevented the Hawaii Supreme Court from citing *Ring* or any other source as illustrating the principles clearly set forth in *Apprendi,* which had been decided before Kaua's direct appeal from his sentence was concluded. Indeed, in recognition of the availability of *Ring,* the Hawaii Supreme Court itself mentioned *Ring* in deciding Kaua's Rule 35 appeal, although it unfortunately confined its discussion of *Ring* to a passing reference. *See Kaua,* 102 Hawai'i at 12 n. 9, 72 P.3d at 484 n. 9. While this court bases its decision on the clear statements in *Apprendi,* this court notes that *Ring* provides an excellent illustration of the express holding in *Apprendi.*

In *Ring,* the United States Supreme Court examined an Arizona statute that provided for life imprisonment or death for those convicted of first-degree murder. The death penalty, however, was available only if the sentencing court made further findings as to the presence or absence of

certain aggravating and mitigating circumstances. *See Ring*, 536 U.S. at 592–93, 122 S.Ct. 2428.

Ring was convicted of first-degree murder in connection with the robbery of a Wells Fargo armored van in which a guard was killed and money was taken from the van. The Supreme Court explained that, under Arizona law, Ring was eligible for the death penalty only if he was either the actual killer or a major participant in the armed robbery that led to the killing who had exhibited a reckless disregard for or indifference to human life. *Id.* at 592, 122 S.Ct. 2428. The evidence at trial did not establish that Ring was the actual killer or that he was a major participant in the robbery/murder. Between Ring's trial and his sentencing proceeding, a co-defendant pled guilty and agreed to cooperate with the prosecution. This co-defendant testified at Ring's sentencing hearing that Ring had planned the robbery and that Ring had shot and killed the guard. *Id.* at 593, 122 S.Ct. 2428. Based on the testimony of the co-defendant at Ring's sentencing hearing, as opposed to the trial evidence presented to the jury, the sentencing judge imposed the death penalty. *Id.* at 594, 122 S.Ct. 2428.

On appeal, Ring argued that his sentence violated *Apprendi*. *Apprendi* held that "the relevant inquiry is one not of form, but of effect." *Id.* at 604, 122 S.Ct. 2428 (quoting *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348). *Apprendi* counseled courts to determine whether "the required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348. The Supreme Court held that, based solely on the jury verdict, the maximum penalty Ring could have received was life in prison, not death. *Ring*, 536 U.S. at 597, 122 S.Ct. 2428. It noted that, in effect, "the required finding

of an aggravated circumstance exposed Ring to a greater punishment than that authorized by the jury's guilty verdict." *Ring*, 536 U.S. at 604, 122 S.Ct. 2428 (quoting *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348) (internal punctuation changes omitted). The Court concluded that Arizona's death penalty statute therefore violated *Apprendi*; the required aggravating circumstances found by the judge operated as "the functional equivalent of an element of a greater offense." *Ring*, 536 U.S. at 609, 122 S.Ct. 2428.

In *Ring*, Arizona argued that Ring's murder conviction was what exposed Ring to a sentence of either life in prison or death. Arizona contended that the judge had merely selected a sentence within the range of life imprisonment to death, based on aggravating factors. The Supreme Court rejected this contention, concluding that it was the aggravating circumstances that had exposed Ring to the death penalty. Because the aggravating circumstances were not determined by a jury, the Supreme Court concluded that Arizona's statute violated *Apprendi*. *See Ring*, 536 U.S. at 603–04, 122 S.Ct. 2428.

*Ring* flowed inexorably from *Apprendi*. Like Ring's extended sentence, Kaua's extended sentence violated *Apprendi*.

The Hawaii Supreme Court's conclusion that Kaua's extended sentence did not violate *Apprendi* was contrary to, and involved an unreasonable application of, clearly established federal law, as determined by the United State Supreme Court. This law was clearly established even before *Ring* so pointedly applied *Apprendi*. The *Kaua* decision simply ignored the language in *Apprendi* stating:

> [W]hen the term "sentencing enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense

than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.

*Apprendi*, 530 U.S. at 494 n. 19, 120 S.Ct. 2348.

*Apprendi* noted that "the relevant inquiry is one not of form, but of effect." *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348. *Accord Ring*, 536 U.S at 604, 122 S.Ct. 2428. The Hawaii Supreme Court ignored the effect of the "protection of the public" determination on Kaua's sentence. Both in the hearing before this court and in its papers, the State of Hawaii admitted that the sentencing judge had to make that "protection of the public" determination before imposing the extended sentence. *See* Opposition Memorandum at 30. What the State does not admit and what the Hawaii Supreme Court failed to recognize was that the effect of that determination was to remove the functional equivalent of an element from the jury's province. Like the aggravating circumstances in *Ring*, which applied what was clearly articulated in *Apprendi*, these judge-made findings of fact exposed Kaua to a greater punishment than that authorized by the jury's guilty verdict. *See Ring*, 536 U.S. at 604, 122 S.Ct. 2428. The constitutional flaw in this procedure is not cured by designating a finding as being based on "extrinsic" facts. *Apprendi* applies equally to elements of an offense and to sentencing factors. *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348.

This case involves a statute that exposed Kaua to an enhanced punishment based on judge-determined facts. The sentencing judge made the "protection of the public" determination only after finding (1) that Kaua had a history of substance abuse and assaultive and threatening behavior, (2) that, when Kaua was under the influence of extreme stress, Kaua was unable to control his behavior, and (3) that Kaua had access to firearms and used those firearms

in a manner that could have hurt minors or other innocent bystanders. These facts were not determined by a jury and were not restricted to Kaua's recidivism. His extended sentence, which was based on these findings, violated *Apprendi* and represented "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

### C. *Blakely is not Retroactive.*

 Kaua argues that his extended sentence also violates the United States Supreme Court's June 2004 decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Blakely* was not decided until Kaua had exhausted his state court remedies and had already filed the present case under § 2254. Given the timing of *Blakely*, it may not serve as a basis for a collateral challenge to a state court judgment of conviction or a sentence. *See Cook v. United States*, 386 F.3d 949, 949 (9th Cir.2004) (holding that *Blakely* does not apply retroactively via an analogous petition under 28 U.S.C. § 2255).

### IV. *CONCLUSION.*

Kaua's § 2254 petition is GRANTED, as Kaua's extended sentence was contrary to, and involved an unreasonable application of *Apprendi*.

This court denies the State of Hawaii's request for a stay of this order. The State of Hawaii is ordered to resentence Kaua in a manner consistent with this order.

The Clerk of this Court is directed to enter judgment in Kaua's favor and to close this case.

IT IS SO ORDERED.