CHRISTOPHER SOUND O'NEILL, aka CHRISTOPHER SOUND LOGAN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 45880

March 8, 2007                                          153 P.3d 38

*Jeremy T. Bosler*, Public Defender, and *Cheryl D. Bond*, Deputy Public Defender, Washoe County, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Gary H. Hatlestad*, Deputy District Attorney, Washoe County, for Respondent.

*Franny A. Forsman*, Federal Public Defender, and *John C. Lambrose*, Assistant Federal Public Defender, Las Vegas, for Amicus Curiae.

Before the Court EN BANC.

## OPINION

By the Court, MAUPIN, C. J.:

This appeal presents the issue of whether the Nevada habitual offender statute, NRS 207.010, as interpreted by this court, violates the United States Supreme Court's decision in *Apprendi v. New Jersey*[1] by requiring "judicial fact-finding" beyond the mere fact of prior convictions. We conclude that the habitual offender statute does not violate *Apprendi* and therefore affirm the district

---

[1]530 U.S. 466 (2000).

court's adjudication of habitual criminality. For the reasons stated below, we also affirm the judgment of conviction pursuant to a jury verdict of three counts of possession of a forged instrument.

## FACTS

A grand jury indicted appellant Christopher O'Neill on three counts of "possession of a forged instrument, a violation of NRS 205.110." The State subsequently filed a notice of intent to have O'Neill classified as a habitual criminal pursuant to NRS 207.010.

Three judicial days before trial, O'Neill requested self-representation. At the hearing on his application, the district court twice asked O'Neill whether he wanted to represent himself. O'Neill uniformly responded that he wanted representation but did not feel that his appointed counsel, Kevin Van Ry, could adequately represent him. In this, O'Neill contended that Mr. Van Ry had not met with him outside of court proceedings and had refused to take his telephone calls. The district court concluded that, because O'Neill did not wish to represent himself, the trial would proceed with Mr. Van Ry as counsel.

The jury found O'Neill guilty on all three counts. Based upon evidence of six prior felony convictions presented by the State at sentencing, the district court adjudicated O'Neill a habitual criminal.

The district court then proceeded to impose concurrent life sentences with the possibility of parole after ten years on each count. The district court also ordered that service of sentence on Count I run concurrently with a sentence imposed in a separate case.[2] The district court further ordered a special sentence of lifetime supervision to commence after any period of probation, term of imprisonment, or period of release on parole. O'Neill received no credit for time served.

O'Neill appeals the judgment of conviction and the adjudication of habitual criminality.

## DISCUSSION

### Habitual criminality

O'Neill argues that the district court erred in adjudicating him a habitual criminal pursuant to NRS 207.010 because the district judge rather than a jury found facts in violation of *Apprendi v. New Jersey*.[3] In *Apprendi*, the United States Supreme Court announced that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

---

[2]Second Judicial District Court Case No. 94-00662C.

[3]530 U.S. 466.

reasonable doubt."[4] Four years later in *Blakely v. Washington*,[5] the Court clarified *Apprendi*, stating that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."[6] This means that the "statutory maximum" is "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."[7]

The issue before us is whether NRS 207.010 and our holdings respecting its application violate *Apprendi*. NRS 207.010(1)(b) provides that a defendant convicted of a felony who has previously been three times convicted of a felony shall be punished with a term of life in prison with or without the possibility of parole or a definite term of 25 years with the possibility of parole. The statute further provides that "[t]he trial judge may, at his discretion, dismiss a count under this section which is included in any indictment or information."[8]

The plain language of NRS 207.010(2) grants the district court discretion to dismiss a count of habitual criminality, not the discretion to impose such an adjudication based on factors other than prior convictions. Therefore, we conclude that NRS 207.010 on its face does not violate *Apprendi*'s mandate. However, we must con-

---

[4]*Id.* at 490.

[5]542 U.S. 296 (2004).

[6]*Id.* at 303.

[7]*Id.* at 303-04.

[8]NRS 207.010(2). NRS 207.010 in its entirety provides:

1. Unless the person is prosecuted pursuant to NRS 207.012 or 207.014, a person convicted in this State of:

(a) Any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who has previously been two times convicted, whether in this State or elsewhere, of any crime which under the laws of the situs of the crime or of this State would amount to a felony, or who has previously been three times convicted, whether in this State or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, is a habitual criminal and shall be punished for a category B felony by imprisonment in the state prison for a minimum term of not less than 5 years and a maximum term of not more than 20 years.

(b) Any felony, who has previously been three times convicted, whether in this State or elsewhere, of any crime which under the laws of the situs of the crime or of this State would amount to a felony, or who has previously been five times convicted, whether in this State or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or the intent to defraud is an element, is a habitual criminal and shall be punished for a category A felony by imprisonment in the state prison:

(1) For life without the possibility of parole;

(2) For life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served; or

sider whether our interpretation of the statute has been inconsistent with *Apprendi* and its progeny.

O'Neill contends that Nevada's case law directs district courts to consider more than the existence of prior convictions in deciding habitual criminal status and thus offends *Apprendi*. He argues that this court has set forth a two-step process in which the district court determines (1) whether the State has proved the predicate convictions and (2) whether it is just and proper to impose a habitual sentence. O'Neill claims that this second step offends *Apprendi* because it involves fact-finding by the district court to impose a sentence beyond the statutory maximum for the primary felony and that *Apprendi* requires that additional facts supporting recidivist sentencing must be found by a jury beyond a reasonable doubt.

The district court in this case admitted evidence of six prior convictions for felony offenses at the sentencing hearing. It concluded that the prior felonies were not remote in time, noting that all of them occurred in 1992 and 1993, that O'Neill was incarcerated from 1993 to April of 2004, and that the instant offense occurred in September of 2004, approximately five months after he was released from prison. The district court also noted that the prior felonies were substantial, that some were violent in nature, and that O'Neill posed a danger to society. O'Neill argues that these are all facts beyond the bare establishment of prior convictions.

O'Neill urges our embrace of *Kaua v. Frank (Kaua III)*,[9] in which the United States Court of Appeals for the Ninth Circuit held that a defendant's "extended sentence" under Hawaii's multiple offender statute violated *Apprendi*.[10] The defendant in *Kaua* was convicted of various charges in connection with a 1999 hostage-standoff situation and received "extended terms" of imprisonment pursuant to the Hawaii habitual offender statute, Hawaii

---

(3) For a definite term of 25 years, with eligibility for parole beginning when a minimum of 10 years has been served.

2. It is within the discretion of the prosecuting attorney whether to include a count under this section in any information or file a notice of habitual criminality if an indictment is found. The trial judge may, at his discretion, dismiss a count under this section which is included in any indictment or information.

[9]436 F.3d 1057, 1062 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 1233 (2007).

[10]*But see People v. Rivera*, 833 N.E.2d 194, 197, 201 (N.Y.) (holding that New York recidivist sentencing scheme does not violate *Apprendi* because the requisite prior convictions are the only determinant of whether the defendant is subject to recidivist sentence, the court then has discretion in deciding whether to impose recidivist sentence or some lesser sentence), *cert. denied*, 126 S. Ct. 564 (2005); *People v. Rosen*, 752 N.E.2d 844, 847 (N.Y. 2001) (same); *People v. Ortiz*, 811 N.Y.S.2d 547, 550-52 (Sup. Ct. 2005) (similar).

Revised Statutes section 706-662(4).[11] This measure required the trial court to conduct a two-step process:[12] first, a determination whether the defendant falls within the " 'class of offenders to which the particular subsection applies' ";[13] and second, a determination whether the defendant's extended imprisonment is necessary for the public's protection "using the procedural standards 'applicable to ordinary sentencing.' "[14]

The trial judge in *Kaua* determined that a 1993 conviction, which included 13 felony counts, qualified Kaua for an extended sentence as a multiple offender and concluded that an extended term of imprisonment was necessary for the public's protection, considering Kaua's history of substance abuse and violent behavior and his access to and use of firearms.[15] Kaua unsuccessfully argued on appeal to the Hawaii Supreme Court that the trial court violated *Apprendi*.[16] Kaua next sought relief in the United States District Court for Hawaii, which concluded that the statute "exposed Kaua to an enhanced punishment based on judge-determined facts" in violation of *Apprendi*.[17] The court granted Kaua's habeas corpus petition to vacate his sentence,[18] and the State of Hawaii appealed to the Ninth Circuit.

The Ninth Circuit affirmed, explaining that *Apprendi* mandated a jury to "find the facts required to satisfy step two" of section 706-662(4), *i.e.*, whether extending a defendant's sentence is nec-

---

[11]*Kaua v. Frank (Kaua II)*, 350 F. Supp. 2d 848, 851 (D. Haw. 2004). At the time of Kaua's crimes, Hawaii Revised Statutes section 706-662(4) provided:

A convicted defendant may be subject to an extended term of imprisonment under section 706-661, if the convicted defendant satisfies one or more of the following criteria:

. . . .

(4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or

(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively[,] would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed forty years if the extended term imposed is for a class A felony.

[12]*Kaua II*, 350 F. Supp. 2d at 857.

[13]*Id.* (quoting *State v. Schroeder*, 880 P.2d 192, 202 (Haw. 1994)).

[14]*Id.* (quoting *Schroeder*, 880 P.2d at 203).

[15]*Id.* at 851-52.

[16]*State v. Kaua (Kaua I)*, 72 P.3d 473, 485 (Haw. 2003).

[17]*Kaua II*, 350 F. Supp. 2d at 861.

[18]*Id.*

essary for the public's protection.[19] The court rejected the State of Hawaii's argument that prior felonies alone subjected a defendant to an extended sentence and that step two was discretionary in light of prior Hawaii decisions holding that both steps of the statute must be followed when the prosecution seeks an extended sentence.[20]

We conclude that *Kaua* is not determinative. Unlike the Hawaii statute, NRS 207.010 only grants a district court the discretion to dismiss a count of habitual criminality, not the discretion to adjudicate that status based on factors other than prior convictions.[21] Our case law has not varied from that basic notion.

In 1993, in *Clark v. State*, we recognized that a habitual criminal adjudication not only required that the requisite felony convictions be authenticated and established, but that the district court determine ''whether it [is] just and proper for [a defendant] to be punished and segregated as a habitual criminal.''[22] We further stated:

> It appears likely, or at least strongly possible, that the trial court thought that once three convictions were established, Clark ''*shall* be punished,'' and that the only discretion allowable was between life with the possibility of parole or life without the possibility of parole. . . . [H]owever, *it was incumbent upon the trial court to weigh properly whether the habitual criminality count should have been dismissed pursuant to the discretion conferred by NRS 207.010(4)*.[23] Based upon what looks very much like a misunderstanding on the part of the trial judge, we have decided to send this case back for resentencing.[24]

Subsequently, citing *Clark*, the Ninth Circuit in *Walker v. Deeds* interpreted Nevada jurisprudence to require that a district court re-

---

[19]*Kaua III*, 436 F.3d at 1060.

[20]*Id.* at 1060-61.

[21]In earlier cases, we defined, to some degree, the factors a district court should consider in determining when to exercise its discretion to dismiss a count of habitual criminality. In *French v. State*, this court explained that the legislative history revealed that the district court may dismiss a recidivist count ''when the prior offenses are stale or trivial, or in other circumstances where an adjudication of habitual criminality would not serve the purposes of the statute or the interests of justice.'' 98 Nev. 235, 237, 645 P.2d 440, 441 (1982); *see also Sessions v. State*, 106 Nev. 186, 191, 789 P.2d 1242, 1244 (1990).

[22]109 Nev. 426, 428, 851 P.2d 426, 427 (1993).

[23]At the time *Clark* was decided, NRS 207.010(4) contained the discretionary provision now contained in subsection 2 of the statute. *See* 1985 Nev. Stat., ch. 544, § 1, at 1643-44.

[24]*Clark*, 109 Nev. at 429, 851 P.2d at 428 (second emphasis added) (footnote omitted).

view and make particularized findings that it is just and proper to adjudicate a defendant a habitual offender.[25] Disagreeing with the Ninth Circuit's analysis, this court explained in *Hughes v. State*:

> Our primary concern in *Clark* was that the sentencing court may have misunderstood the law and, as a result, did not exercise its discretion in adjudicating Clark as a habitual criminal. The *Walker* court's interpretation of *Clark* is correct to the extent that it states that Nevada law requires a sentencing court to exercise its discretion and weigh the appropriate factors for and against the habitual criminal statute before adjudicating a person as a habitual criminal. However, nothing in *Clark* stands for the proposition that in meeting this obligation the sentencing court must utter specific phrases or make "particularized findings" that it is "just and proper" to adjudicate a defendant as a habitual criminal. The sole issue pursuant to *Clark* is whether the sentencing court actually exercised its discretion. . . . [T]his court looks to the record as a whole to determine whether the sentencing court actually exercised its discretion. Thus, as long as the record as a whole indicates that the sentencing court was not operating under a misconception of the law regarding the discretionary nature of a habitual criminal adjudication and that the court exercised its discretion, the sentencing court has met its obligation under Nevada law.[26]

A close reading of these cases shows that they are concerned with ensuring that district courts in such matters are aware of the statutory discretion to dismiss a count of habitual criminality under NRS 207.010. In light of *Apprendi*, we disapprove any interpretation of our prior case law as suggesting that facts other than prior convictions must be found in order to adjudicate a defendant a habitual criminal. We stress that the "just and proper" determination relates solely to the district court's statutorily granted discretion to dismiss a count of habitual criminality pursuant to NRS 207.010(2). Thus, a district court may consider facts such as a defendant's criminal history, mitigation evidence, victim impact statements and the like in determining whether to dismiss such a count.[27] Accordingly, such facts do not operate to increase the punishment beyond the already established statutory maximum and therefore need not be found by a jury beyond a reasonable doubt. And the plain language of the statute dictates that should the dis-

---

[25]50 F.3d 670, 673 (9th Cir. 1995).

[26]116 Nev. 327, 332-33, 996 P.2d 890, 893-94 (2000).

[27]We note that nothing in the statute or in this court's case law dictates when a district court may exercise its discretion to dismiss a habitual criminal allegation, *i.e.*, before or after it decides whether the State has proven the requi-

trict court elect not to dismiss the count, it must impose a sentence within the range prescribed in NRS 207.010(1). We therefore conclude that neither NRS 207.010 nor our case law interpreting it violates *Apprendi*.[28] Therefore, the district court properly imposed habitual criminal status upon O'Neill.

## Self-representation

O'Neill contends that the district court violated his right to self-representation when it refused to permit O'Neill to represent himself, or even canvass O'Neill pursuant to *Faretta v. California*.[29] "A criminal defendant has an 'unqualified right' to represent himself at trial so long as his waiver of counsel is intelligent and voluntary."[30] "Denial of that right is per se reversible error."[31] "[B]efore allowing a defendant to waive counsel and represent himself, the trial court must ensure that the defendant is competent and that the waiver of counsel is knowing, voluntary, and intelligent."[32] "The court should conduct a *Faretta* canvass to apprise 'the defendant fully of the risks of self-representation and of the nature of the charged crime so that the defendant's decision is made with a "clear comprehension of the attendant risks." ' "[33]

A district court may, however, deny a defendant's request for self-representation where the "request is untimely, the request is equivocal, the request is made solely for the purpose of delay, the defendant abuses his right by disrupting the judicial process, or the defendant is incompetent to waive his right to counsel."[34]

---

site number of prior convictions. We can envision circumstances where a compelling showing might be made convincing a district court to dismiss without even considering the validity of the prior convictions.

[28]During the pendency of the proceedings in this matter, the United States Supreme Court handed down its decision in *Cunningham v. California*, 549 U.S. 270 (2007). Upon our review of *Cunningham*, we conclude that it is more akin to *Kaua* and that *Cunningham* does not affect our determination that NRS 207.010 survives a Sixth Amendment challenge. Specifically, the statutes at issue in *Kaua* and *Cunningham* both require the district court to find additional facts before the defendant is exposed to an extended term.

[29]422 U.S. 806 (1975).

[30]*Tanksley v. State*, 113 Nev. 997, 1000, 946 P.2d 148, 150 (1997).

[31]*Hymon v. State*, 121 Nev. 200, 212, 111 P.3d 1092, 1101 (2005) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984)).

[32]*Id.*

[33]*Id.* (quoting *Johnson v. State*, 117 Nev. 153, 164, 17 P.3d 1008, 1016 (2001) (citing *Tanksley v. State*, 113 Nev. 997, 1001, 946 P.2d 148, 150 (1997) (quoting *Graves v. State*, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996))))).

[34]*Tanksley*, 113 Nev. at 1001, 946 P.2d at 150.

Here, the district court failed to specify its rationale for denying O'Neill's request outright without conducting a *Faretta* canvass. Regardless, we conclude that the district court did not err in failing to perform a *Faretta* canvass and denying O'Neill's request because O'Neill's request was untimely. In this, we note that O'Neill made his request only three judicial days before the trial date. Had the district court granted O'Neill's request the trial would have been undoubtedly delayed.

The issue remains whether ineffective assistance of counsel forced O'Neill to request self-representation. According to O'Neill's statements, as of the Thursday before the Monday trial, Mr. Van Ry had not yet met with O'Neill outside of court proceedings and refused to take O'Neill's telephone calls. If O'Neill's assertions are correct, then he may have a valid claim for ineffective assistance of counsel to be addressed in subsequent habeas proceedings.

*Allocution*

O'Neill contends that the district court denied his statutory right to allocution pursuant to NRS 176.015(2)(b). In this, he claims that the district court never offered him an opportunity to make a statement as required under NRS 176.015(2)(b) and that we should remand this case for a new sentencing hearing. We discern no error upon our review of the record.

Specifically, during the sentencing hearing, Mr. Van Ry addressed various alleged errors in O'Neill's presentence investigation report and then indicated that "perhaps I should have O'Neill point [the errors in the report] out to the court and let him address the court as well at the present time." The district court responded, "Yes. O'Neill, would you like to say anything?" Believing that the court asked him to address the report only, O'Neill proceeded to address various errors in the report. While O'Neill may have mistakenly believed that the district court only asked him to address the errors in the report, the transcript suggests that the district court asked O'Neill to address the court regarding any issues. Going further, the record clearly indicates that the district court addressed O'Neill as mandated by NRS 176.015(2)(b).

*Brady claim*

Finally, O'Neill argues that he was denied his right to due process, to a fair trial, to confront witnesses against him, and to assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments because the State failed to disclose that O'Neill's pa-

role and probation officer, Brent Cooper, who testified at trial, engaged in misconduct and was possibly dismissed from his employment for the misconduct. Pursuant to *Brady v. Maryland*,[35] a state must disclose evidence favorable to the defense when that evidence is material either to guilt or to punishment.[36] Evidence must also be disclosed if it provides grounds for the defense to impeach the credibility of the State's witnesses or to bolster the defense case.[37] "[T]here are three components to a *Brady* violation: the evidence at issue is favorable to the accused; the evidence was withheld by the state, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material."[38] In this particular case, the record contains no evidence beyond O'Neill's own assertions that Officer Cooper engaged in misconduct or was dismissed. The record also contains no evidence indicating that the State withheld any information regarding Officer Cooper from O'Neill. As such, we conclude no *Brady* violation occurred.

## CONCLUSION

We conclude that NRS 207.010 does not violate *Apprendi* and therefore affirm the adjudication of habitual criminality. We also conclude that O'Neill's other contentions do not warrant reversal. Accordingly, we affirm the judgment of conviction of three counts of possession of a forged instrument and the adjudication of habitual criminality. However, we remand this matter for entry of an amended judgment of conviction vacating the special sentence of lifetime supervision as O'Neill was not convicted of a crime warranting this sentence.[39]

GIBBONS, HARDESTY, PARRAGUIRRE, DOUGLAS, CHERRY and SAITTA, JJ., concur.

---

[35]373 U.S. 83 (1963).

[36]*Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000).

[37]*Id.* at 67, 993 P.2d at 37.

[38]*Id.*

[39]*See* NRS 176.0931.