# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LARRY GENE TILCOCK,
       *Petitioner-Appellant,*

v.

MICHAEL BUDGE,
       *Respondent-Appellee.*

No. 07-16184

D.C. No.
CV-03-00037-ECR

OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, District Judge, Presiding

Argued and Submitted
June 9, 2008—San Francisco, California

Filed August 15, 2008

Before: J. Clifford Wallace and Susan P. Graber,
Circuit Judges, and David A. Ezra,* District Judge.

Opinion by Judge Graber

*The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

## COUNSEL

David Anthony and Anne R. Traum, Assistant Federal Public Defenders, Las Vegas, Nevada, for the petitioner-appellant.

Conrad Hafen, Deputy Attorney General, and Thom Gover, Senior Deputy Attorney General, Las Vegas, Nevada, for the respondent-appellee.

## OPINION

GRABER, Circuit Judge:

A Nevada jury convicted Petitioner Larry Gene Tilcock of burglary, felony failure to stop on signal of police, and being a felon in possession of a firearm. The trial court sentenced Petitioner under Nevada's habitual criminal statute, Nev. Rev. Stat. § 207.010, to three concurrent terms of life imprisonment without the possibility of parole. The Nevada Supreme Court dismissed Petitioner's direct appeal and affirmed the trial court's denial of his habeas petitions. The federal district court denied Petitioner's petition for a writ of habeas corpus. We affirm in part, reverse in part, and remand for an evidentiary hearing.

FACTUAL AND PROCEDURAL HISTORY

Because Petitioner filed his habeas petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, governs. 28 U.S.C. § 2254; *Woodford v. Garceau*, 538 U.S. 202, 210 (2003). We presume that the state court's findings of fact are correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner has not attempted to overcome the presumption with respect to the underlying events. We therefore rely on the state court's recitation of the facts. As found by the Nevada state trial court:

> On January 21, 1998, detectives from the Las
> Vegas Metropolitan Police Department, Repeat

Offender's Program, initiated surveillance on [Petitioner] at his residence. The detectives observed [Petitioner] get into his car, and drive away from his residence. [Petitioner] drove to an apartment complex, got out of his vehicle, and looked into the windows of several apartments. [Petitioner] left that complex, and followed a car into a gated condominium complex.

At the condominium complex, Sergeant Levins saw [Petitioner] back his car into a parking spot, and open the trunk. Sergeant Levins positioned himself so that he could see [Petitioner] through a crack in the block wall of the complex. A few moments later Sergeant Levins observed [Petitioner] standing on a step by a condominium window with a tire iron in his hand. Then Sergeant Levins saw [Petitioner] turn toward the condominium. [Petitioner] stepped out of the Sergeant's point of view, and Sergeant Levins immediately heard the sound of breaking glass. Next, Sergeant Levins heard glass being cleared from the window frame. As Sergeant Levins was about to give the signal for the team to move in to arrest [Petitioner], [Petitioner] walked back to his car, and Detective Johnson pulled into the complex.

When [Petitioner] saw Detective Johnson, he hopped in his car and began to drive away. Two detectives were approaching [Petitioner] with their guns drawn, and [Petitioner] accelerated his car, and drove directly at one of the men, who had to jump out of [Petitioner]'s way. Detective Sias pursued [Petitioner] to [the] gate of the complex, which had been blocked by several police cars. He parked three or four feet behind [Petitioner]'s car.

Detective Sias exited his vehicle and began yelling at [Petitioner] that he was a police officer and

that [Petitioner] should exit his vehicle. [Petitioner] was not exiting the vehicle as Detective Sias approached [Petitioner]'s car. Detective Sias observed [Petitioner] move his hand toward a baseball cap in the passenger seat. The cap was covering an object that Detective Sias thought was a weapon.

[Petitioner] quickly moved his hand away from the cap, glanced in the car mirrors, and put the car in reverse and accelerated backwards. He slammed his car into Detective Johnson's vehicle. Detective Sias saw [Petitioner] make another movement to grab what he had earlier perceived to be a weapon. Because [Petitioner] was known to be armed and dangerous, Detective Sias, who feared for everyone's safety, shot [Petitioner] in the arm, and watched [Petitioner] go down.

A few seconds later, [Petitioner] sat up, accelerated, and sped out of the gate past the police cars. [Petitioner] was able to escape by driving at excessive speeds.

Officer Tafoya received an emergency call to aid in the pursuit of a suspect. He turned on his lights and siren, and began to drive to the area described in the call. While he was driving on Reno Avenue, Officer Tafoya saw [Petitioner] driving directly toward him on the wrong side of the road. Officer Tafoya had to swerve out of [Petitioner]'s way and onto the curb to avoid being struck by [Petitioner]. [Petitioner] kept driving, and Officer Tafoya made a U-turn to follow him.

[Petitioner] made several illegal driving maneuvers, endangering the lives of many more people. The chase finally ended when [Petitioner] crashed into a curb at a Circle K convenience store. While

placing [Petitioner] under arrest, Officer Tafoya dis-
covered a handgun in [Petitioner]'s pocket.

(Citations omitted.)

The State of Nevada charged Petitioner with burglary, fel-
ony failure to stop on signal of police, being a felon in posses-
sion of a firearm, and two counts of attempted murder. A jury
convicted Petitioner of the burglary, felony failure to stop,
and felon in possession of a firearm charges, but acquitted
him of the attempted murder charges. The trial court sen-
tenced Petitioner as a habitual criminal, under Nevada
Revised Statutes section 207.010, to three consecutive terms
of life imprisonment without the possibility of parole.[1]

---

[1]Under section 207.010:

   1. . . . [A] person convicted in [Nevada] of:

   . . . .

  (b)   Any felon[], who has previously been three times convicted,
whether in this state or elsewhere, of any crime which under
the laws of the situs of the crime or of this state would
amount to a felony . . . is a habitual criminal and shall be
punished for a category A felony by imprisonment in the
state prison:

    (1)   For life without the possibility of parole;

    (2)   For life with the possibility of parole, with eligibility
for parole beginning when a minimum of 10 years has
been served; or

    (3)   For a definite term of 25 years, with eligibility for
parole beginning when a minimum of 10 years has been
served.

   2.  It is within the discretion of the prosecuting attorney whether
to include a count under this section in any information or
file a notice of habitual criminality if an indictment is found.
The trial judge may, at his discretion, dismiss a count under
this section which is included in any indictment or informa-
tion.

Petitioner appealed to the Nevada Supreme Court, which affirmed the trial court's judgment of conviction. Petitioner then filed two habeas petitions and one motion for modification of sentence with the state trial court, which the court denied. The Nevada Supreme Court consolidated all three post-conviction applications and affirmed the trial court. Petitioner filed a habeas petition in federal district court, alleging 12 grounds for relief.

Petitioner also filed in state trial court a motion to correct an illegal sentence, which the court denied. The Nevada Supreme Court affirmed the trial court, and Petitioner amended his federal habeas petition to include this claim as a thirteenth ground for relief.

The district court denied Petitioner's habeas petition. Petitioner timely appeals.

## STANDARDS OF REVIEW

We review de novo a district court's denial of a habeas petition filed pursuant to 28 U.S.C. § 2254. *Gill v. Ayers*, 342 F.3d 911, 917 (9th Cir. 2003). Habeas relief is warranted only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in an unreasonable determination of facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1)-(2); *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000).

We review for abuse of discretion a district court's denial of a request for an evidentiary hearing under AEDPA standards. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005). A district court abuses its discretion in denying a request for an evidentiary hearing if a petitioner "has alleged facts that, if proven, would entitle him to habeas relief, and . . . he did not receive a full and fair opportunity to develop those facts."[2] *Id.* at 1167 (internal quotation marks omitted).

---

[2]If the state courts did not afford a petitioner a full and fair hearing, "then the state court's decision was based on an unreasonable determination of the facts." *Earp*, 431 F.3d at 1167.

## DISCUSSION

Petitioner raises a multitude of issues in his appeal, only two of which warrant discussion. On all other issues, we agree with the district court and affirm its rulings.

A. *Nevada's habitual sentencing statute does not violate* Apprendi.

Petitioner argues that his sentence as a habitual offender under Nevada's habitual criminal statute, Nev. Rev. Stat. § 207.010, violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), "because a habitual sentence under [section] 207.010, necessarily depends on judicial factfinding." According to Petitioner, "Nevada has a two-step process in which the court determines (1) whether the State has proved the predicate convictions, and (2) whether to dismiss or impose a habitual sentence based on the record as a whole." (Internal quotation marks omitted.) We disagree.

**[1]** Under *Apprendi*, 530 U.S. at 490, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) Under section 207.010, if a person has three qualifying felony convictions and is convicted of another felony, the person "*is* a habitual criminal and *shall* be punished" as one, Nev. Rev. Stat. § 207.010(1)(b) (emphases added), unless a prosecutor or a judge exercises discretion to be more lenient, *id.* § 207.010(2). Thus, under the terms of the statute, the fact of Petitioner's prior convictions alone exposed Petitioner to the statutory maximum of life imprisonment without the possibility of parole. The statute does not require or even authorize additional judicial factfinding to determine whether a defendant is a habitual criminal. Instead, "[t]he plain language of Nevada Revised Statutes § 207.010(2) grants the [trial] court discretion to *dismiss* a count of habitual criminality, not the discretion to *impose*

such an adjudication based on factors other than prior convictions." *O'Neill v. State*, 153 P.3d 38, 40 (Nev.) (emphases added), *cert. denied*, 128 S. Ct. 153 (2007). The opportunity for leniency by the prosecutor or the judge is a judgment call, not a factual finding. And that discretion can only reduce, not increase, the statutorily imposed maximum punishment.

**[2]** Petitioner argues that "*O'Neill* cannot undo in [Petitioner]'s case the effects of the [Nevada] court's prior case law requiring judicial fact-finding as a necessary component of every habitual criminal adjudication." By its own reasoning, though, *O'Neill* changed nothing under section 207.010. *See O'Neill*, 153 P.3d at 43 ("[W]e disapprove any interpretation of our prior case law as suggesting that facts other than prior convictions must be found in order to adjudicate a defendant a habitual criminal."). And in *Hughes v. State*, 996 P.2d 890 (Nev. 2000) (per curiam), seven years before it issued *O'Neill*, the Nevada Supreme Court emphasized that, although section 207.010 renders a defendant with three qualifying convictions a habitual criminal, the statute gives a sentencing court only the discretion *not* to adjudicate the defendant as a habitual criminal. *See id.* at 892-94 ("[T]he decision to adjudicate an individual as a habitual criminal is not an automatic one because the district court has broad discretion to dismiss a habitual criminal allegation. . . . [A]s long as the record as a whole indicates that the sentencing court was not operating under a misconception of the law regarding the discretionary nature of a habitual criminal adjudication and that the court exercised its discretion, the sentencing court has met its obligation under Nevada law."). Consequently, both before and after *O'Neill*, under Nevada precedent, "a [Nevada trial] court may consider facts such as a defendant's criminal history, mitigation evidence, victim impact statements and the like in determining whether to dismiss such a count." *O'Neill*, 153 P.3d at 43. But "such facts do not operate to increase the punishment beyond the already established statutory maximum and therefore need not be found by a jury beyond a reasonable doubt." *Id.*

Petitioner's reliance on *Kaua v. Frank*, 436 F.3d 1057 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 1233 (2007), is misplaced. In *Kaua*, we held that the sentencing scheme under Hawaii Revised Statutes section 706-662(4)(a), which provided for an extended sentence if "the defendant [wa]s a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term [wa]s necessary for protection of the public," violated *Apprendi*. We so held because

> [t]he Hawaii Supreme Court ha[d] ruled that section 706-662(4) requires the sentencing court to conduct a two-step process. First, the court must find that the defendant falls within the class of "multiple offenders" subject to an extended sentence. Under section 706-662(4)(a), this first step requires the court to find that the defendant is being sentenced for two or more felonies, or is already under sentence of imprisonment for a felony. Second, the court must determine whether an extended sentence is necessary for the protection of the public.

*Kaua*, 436 F.3d at 1059 (footnotes omitted). Under Hawaii precedent, both steps must be followed for a defendant to qualify for an extended sentence. *See id.* at 1060-61 ("In *State v. Okumura*, [894 P.2d 80 (Haw. 1995),] the Hawaii Supreme Court stated that both steps of the process 'must be followed' when the prosecution seeks an extended sentence." (emphasis omitted)).

**[3]** In other words, under Hawaii law, a defendant qualifies for an extended sentence based on *both* the fact of prior convictions *and* a judicial finding that an extended sentence is necessary for public protection. By contrast, under both the text of Nevada Revised Statutes section 207.010 and Nevada precedent, the fact of prior convictions *alone* exposes a defendant to the statutory maximum under Nevada's habitual criminal statute. Consequently, section 207.010 does not violate

*Apprendi*, and the Nevada Supreme Court did not unreasonably apply *Apprendi* in rejecting Petitioner's claim.

B.   *Petitioner is entitled to an evidentiary hearing on his claim of ineffective assistance of trial counsel at sentencing.*

Petitioner argues that his trial counsel was ineffective at sentencing because counsel failed to investigate the eight convictions listed in the prosecution's Notice of Intent to Seek Punishment as a Habitual Criminal and erroneously conceded the eight convictions. Petitioner asserts that one conviction did not exist, one conviction was too old to be considered for sentencing purposes, one conviction was a misdemeanor, and three of the convictions were duplicative because they arose from the same transaction or occurrence as another conviction. According to Petitioner, had his trial counsel provided effective representation, the state trial court could have considered only two of the eight proffered convictions and, therefore, could not have found that Petitioner qualified as a habitual criminal.

In his state habeas petition and again in his federal petition, Petitioner argued that his trial counsel was ineffective for failing to object to non-qualifying convictions that would have rendered Petitioner ineligible to be sentenced as a habitual criminal. In both petitions, Petitioner sought an evidentiary hearing to develop this claim, which the state courts and the federal district court denied. Petitioner thus has not received a full and fair opportunity to develop his claim. *See Earp*, 431 F.3d at 1169 ("It is evident from the record that [the petitioner] has never received an opportunity to develop his claim . . . . The issue . . . was raised on habeas, and neither the state court nor the district court allowed him an evidentiary hearing."). Consequently, Petitioner is entitled to an evidentiary hearing to develop the facts of this claim if he has presented a colorable claim for relief. *Id.* at 1167. Petitioner's claim is

colorable if he has alleged specific facts that, if true, would entitle him to relief. *Id.* at 1167 & n.4.

**[4]** Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), an ineffective assistance claim "has two components. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense."

**[5]** On the deficiency prong, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). Here, the facts as alleged by Petitioner overcome that presumption. We can think of nothing strategic about failing to object at sentencing to categorically non-qualifying convictions that would prevent a defendant from being eligible for sentencing under a habitual criminal statute. If the prosecution alleges that a defendant is a habitual criminal on the basis of non-qualifying convictions, the defendant has everything to gain and nothing to lose by objecting.

**[6]** On the prejudice prong, the facts alleged by Petitioner "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If Petitioner's trial counsel had provided effective assistance by objecting to the proffered non-qualifying convictions and thereby limited the trial court's consideration to two qualifying convictions, Petitioner would have been ineligible for sentencing as a habitual criminal under section 207.010.[3] In other words, the trial court

---

[3]The government argues that any error was harmless because Petitioner was impeached at trial with three prior felony convictions: a 1973 drug conviction, a 1987 burglary conviction in Nevada, and a 1988 burglary

could not have sentenced Petitioner to three concurrent terms of life imprisonment without the possibility of parole; instead, Petitioner would have faced a statutory maximum sentence of 22 years' imprisonment.

[7] We hold that Petitioner is entitled to an evidentiary hearing because the facts that he has alleged, if proved, may demonstrate ineffective assistance of his trial counsel at sentencing. We remand for an evidentiary hearing to give Petitioner an opportunity to prove the facts supporting his claim.

AFFIRMED in part, REVERSED in part, and REMANDED for an evidentiary hearing. The parties shall bear their own costs on appeal.

---

conviction in California. However, only the 1987 conviction in Nevada was proffered by the prosecution as a qualifying conviction for Petitioner's sentence as a habitual criminal, and Petitioner does not challenge the legitimacy of that conviction. Consequently, the prosecution's use of the other two convictions for impeachment purposes does not alter the colorable nature of Petitioner's claim that effective trial counsel would have eliminated six of the prosecution's eight proffered convictions for sentencing Petitioner as a habitual criminal.