NOONAN, Circuit Judge,
dissenting:
“Difficult” is the term chosen by the Supreme Court to characterize the process of a federal court reviewing a state criminal conviction under AEDPA. “Difficult” is not the same as “impossible.” The Supreme Court has not cut off our review of state criminal convictions. Nor has Congress eliminated our review.
We are not engaged in an illusory examination of the proceedings that have taken place. We may not reverse the state court if “any theories or arguments could have supported” the state court’s denial of relief. Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). We are, therefore, bound tp consider not only the actual reasoning, of the state court, but the broader rapge of reasons that could support the result reached by that court. “Difficult,” not impossible.
The standard set by the Supreme Court makes the test objective. The standard is not the subjective state of mind of the actual state judge but the objective test of what a properly functioning state judge would have done.
Under California law, a prosecutor of murder need not prove motive. People v. Solomon, 49 Cal.4th 792, 112 Cal.Rptr.3d 244, 234 P.3d 501, 520 (2010). But, the prosecutor must either prove intent or a conscious disregard for human life. See People v. Lasko, 23 Cal.4th 101, 96 Cal.Rptr.2d 441, 999 P.2d 666, 668 (2000). When the prosecutor attempts to prove motive and fails to do so, the lack of intent is drawn into question. Here, no motive for the defendant to kill was shown. What intent was shown?
i'fi # * ❖ * *
*1078 Michael Demirdjian was convicted at age fifteen of the brutal murders of thirteen-year-old Chris McCulloch and fourteen-year-old Blaine Taimo, Jr. The evidence against Demirdjian was so weak that his first trial ended with a hung jury. At his second trial, it took a jury five days to convict him. The prosecution’s stated motive for Demirdjian to have committed the murders — a transferred desire for revenge — was risible. In fact, the evidence clearly pointed to a nineteen-year-old drug dealer with a burning need for cash as the killer. Yet fifteen years later, in spite of the prosecution’s promise to the jury that other individuals who had participated in the killings would be brought to justice, Demirdjian is the only person to have been charged with and punished for the killings.
Had Demirdjian been convicted as the result of a fair trial, we would be obligated to overlook these problems. But his conviction was not the result of a fair trial. During closing argument, Demirdjian’s attorney, Charles Mathews, sat silently while the prosecution repeatedly shifted the burden of proof onto the defense, referred to the fact that Demirdjian did not testify, and raised with the jury the specter of the 9/11 attacks and the Columbine mass murders. Demirdjian was effectively without the assistance of counsel while the prosecution made impermissible argument after impermissible argument. Due to this lack of effective counsel, Demirdjian’s petition for habeas relief should be granted.
I
On Sunday, July 23, 2000, the bodies of Chris McCulloch, age thirteen, and Blaine Taimo, Jr., age fourteen, were found on an elementary school playground in La Cres-centa, California. Both boys had died of multiple blunt force trauma. Next to Tal-mo’s body, officers found a sixteen-pound rock stained with the blood of both of the victims. A twelve-by-ten-foot bench, weighing more than sixty pounds, lay across McCulloch’s chest and neck.
The previous day, fifteen-year-old Michael Demirdjian had been playing basketball at the school with the two boys. There was physical evidence tying Demirdjian to the crime scene, including, blood samples, a shoe print, and positive dog scent identifications. Demirdjian’s first trial ended in a mistrial because the jury remained deadlocked following a week of deliberations. Eight jurors voted to convict, four to acquit. Demirdjian testified.
Jury selection for Demirdjian’s second trial began the day before the terrorist attacks of September 11, 2001. Trial commenced six days later. The prosecution theorized that Demirdjian had committed the murders out of revenge because one of the victims had introduced him to Adam Walker, a nineteen-year-old drug dealer who subsequently stole hundreds of dollars from Demirdjian in a drug deal gone sour. According to the prosecution, Demirdjian spent a week unsuccessfully trying to ambush Walker to recover his money and exact revenge from him. The prosecution said that Demirdjian’s chosen weapons were “beebee guns and knife, simulated weapons.” But then, according to the prosecution, Demirdjian decided to rob and beat to death his two friends because they were young and “vulnerable.” He allegedly used his fists, a rock, and a park bench.
The defense acknowledged that Demird-jian was at the crime scene and witnessed the murders. It maintained that he did not participate in them in any way. Instead, the defense argued that Walker had killed the teens in a drug-induced fit of rage because he needed their money to pay a debt. Demirdjian did not testify.
On November 1, 2001, after five days of deliberations, the jury convicted Demirdji-an on two counts of first-degree murder. However, the jury acquitted him of the *1079 two robbery counts, rejecting the prosecution’s primary theory that Demirdjian had conspired to commit robbery, resulting in felony murder.
II
We review de novo a district court’s denial of a petition for a writ of habeas corpus. Stanley v. Schriro, 598 F.3d 612, 617 (9th Cir. 2010). The Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”) prohibits our granting relief unless the state court’s “adjudication] on the merits ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1).
Because no California court has provided a reasoned decision on Demirdjian’s claim of ineffective assistance of counsel (“IAC”), we must determine whether any theories or arguments “could have supported” the state court’s denial of relief. Harrington, 562 U.S. at 102, 131 S.Ct. 770. If so, we “must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.” Id.
Trial counsel’s failure to object to remarks made by the prosecution in closing argument and rebuttal may serve as the basis for an IAC claim. Zapata v. Vasquez, 788 F.3d 1106, 1112 (9th Cir. 2015); Trillo v. Biter, 769 F.3d 995, 1002 (9th Cir. 2014). The Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), provides the clearly established federal law under which IAC claims arise. To prevail under Strickland, a defendant must show (1) that his counsel’s performance was deficient and (2) that he was prejudiced by that deficient performance. Id. at 687, 104 S.Ct. 2052. Based on analysis of Strickland’s deficient performance and prejudice prongs, I conclude that Demirdjian’s counsel was constitutionally ineffective and that no reasonable argument exjsts to the contrary. Under the stringent standards established by AEDPA, habeas relief is appropriate.
Ill
Under the first prong of Strickland, “the proper measure of attorney performance [is] simply reasonableness under prevailing professional norms,” Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quotation marks omitted). In evaluating reasonableness, we ask whether counsel could have had a tactical or strategic purpose guiding her conduct. See Strickland, 466 U.S. at 689-91, 104 S.Ct. 2052.
A.
Clearly established federal law as determined by the Supreme Court forbids attempts by the prosecution in a criminal case to shift the burden of proof of any elements of the crime to the defendant. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The state bears the duty to establish guilt beypnd a reasonable doubt. Id. at 362, 90 S.Ct. 1068. In violation of this basic rule, the prosecution repeatedly indicated to the jury that De-mirdjian bore the burden of providing evidence of his innocence.
At the outset of its closing argument, the prosecution told the jury it was going to “explain the theory of the prosecution and relation of the facts to the law.” The prosecutor then told the jury that “it is always easier to attack a case than to defend it. And it is clear that the People have the burden of proof, arid that will be an instruction that you receive. But attack the case with real evidence, ioith compe *1080 tent evidence, not meanness, not nastiness.”
Having framed for the jury an approach in which the defense was required to produce “real” and “competent” evidence, the prosecution then repeatedly called on the defense to present “real evidence” during the remainder of its initial closing argument. After detailing for the jury evidence of multiple lacerations on Demirdjian’s hands, the prosecutor demanded the defense produce evidence to refute that the lacerations were caused by using a rock to beat the two victims: “So I say to you, Mr. Mathews, explain it. What is the explanation for this other than mine? What is the evidence that is offered other than ours.” After discussing the -blood stain evidence, the prosecution demanded the defense produce evidence to prove the blood stains did not link Demirdjian to the murders: “So, Mr. Mathews, please explain to us, if you can, if you will, the unexplainable, which is how did Chris McCulloch’s blood get on the doorjamb. By competent, admissible evidence. Not by way of hypothesis, not by way of attorney spin, but by evidence admissible in a court of law.”
In spite of these clear and repeated suggestions by the prosecution that the defense was required to provide “competent, admissible evidence,” Mathews never once objected during the prosecution’s initial closing argument. Following defense counsel’s closing remarks, the prosecution in its rebuttal immediately repeated its framing of the approach it had urged on the jury: “I’m going to revisit all the questions that Mr. Barshop posed to Mr. Mathews, and I’m going to ask you whether they were answered.... I think that you’ll find that most of the questions, if any at all, were not answered.” After commenting on the prosecution’s evidence (cuts and bruises on Demirdjian’s hands) and permissibly asking a rhetorical question — “How does Mr. Mathews explain that?” — the prosecution repeated its impermissible demand: “Explain it with competent, reliable, admissible evidence.” It again repeated this demand while criticizing Mathews’s explanation: “That’s not a good explanation; not based on reliable, competent evidence.” And immediately repeated again: “[Mr. Mathews] has not explained it with competent, reliable, admissible evidence.”
Nearing the end of its rebuttal, the prosecution continued to impermissibly cata-logue the failures of the defense to explain the state’s evidence, arguing the defense had produced no “competent, reliable, admissible evidence.”
The prosecution may permissibly comment on the defense’s failure to provide evidence to support its version of the story. People v. Bradford, 15 Cal.4th 1229, 65 Cal.Rptr.2d 145, 939 P.2d 259, 323 (1997). Here, the prosecution impermissibly crossed the line, arguing the defense had provided no evidence to refute the prosecution’s story. In doing so, the prosecution implicitly told the jury that Demirdjian bore the duty to establish his innocence beyond a reasonable doubt. The trial court silently acquiesced in these statements. The demand that Demirdjian prove his innocence violated Demirdjian’s due process right “against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In re Winship, 397 U.S. at 364, 90 S.Ct. 1068.
B.
Demirdjian’s attorney remained silent while the prosecution repeatedly commented on the fact that at his second trial Demirdjian did not testify. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), prohibits a prosecutor from commenting on a defendant’s decision not to testify. Such “comment is unaccept *1081 able ‘if it is manifestly intended to call attention to the [defendant’s] failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.’ ” Rhoades v. Henry, 598 F.3d 495, 510 (9th Cir. 2010) (quoting Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987)).
Comment is also unacceptable “if the defendant is the sole person who could provide information on a particular issue.” Id.; see also Griffin, 380 U.S. at 614-15, 85 S.Ct. 1229 (forbidding prosecutorial comment where an “inference of guilt” arises out of an accused’s “failure to testify as to facts peculiarly within [his] knowledge”).
Regarding the defense’s theory that De-mirdjian had injured his hands while playing basketball, the prosecutor commented:
So I say to you, Mr. Mathews, explain it.... Where did these injuries on the defendant’s hands come from?
Later, the prosecution asked:
So, Mr. Mathews ... how did Chris McCulloch’s blood get on [Demirdjian’s] doorjamb? By competent, admissible evidence. Explain it to us. Not by way of hypothesis, not by way of attorney spin, but by evidence admissible in a court of laiv.
And still later:
Then [Demirdjian] lied to [Talmo’s stepmother]. Have you heard an explanation for that?
Only Demirdjian could have supplied the answers to these questions. This line of questioning necessarily called attention to his decision not to testify. There can be “no fairminded disagreement” that such pervasive commentary violated Griffin. White v. Woodall, — U.S. -, 134 S.Ct. 1697, 1706, 188 L.Ed.2d 698 (2014) (internal quotation marks omitted).
C.
Trial counsel’s failure to object when the prosecution sought to capitalize on the public hysteria that followed the terrorist attacks of September 11, 2001, which had taken place less than a week before trial, only strengthens the conclusion that he was constitutionally ineffective. For instance, the prosecution emphasized that these murders were an act of “evil” and that “evil has no age barriers, no nationality barriers, nor boundaries.” The prosecution also linked Demirdjian’s alleged crime to “[t]errorism against the state,” referenced the “World Trade Center attack,” and reminded the jury of “Columbine” when asking rhetorically whether “kids kill kids.” These appeals to jurors’ emotions were clearly improper. See United States v. Weatherspoon, 410 F.3d 1142, 1149 (9th Cir. 2005) (condemning “prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury”). Again, Demirdjian’s attorney raised no objections.
D.
There were several bases for trial counsel to object. The question remains whether Mathews’s failure to do po fell “within the wide range of reasonable professional assistance [that] might be considered sound trial strategy.” Tilcock v. Budge, 538 F.3d 1138, 1146 (9th Cir. 2008).
“Absent egregious misstatements” by the prosecution, defense counsel’s failure to object during closing argument is typically considered “a reasonable strategic decision” that falls within the “wide range of permissible professional legal conduct.” Cunningham v. Wong, 704 F.3d 1143, 1159 (9th Cir. 2013). Here, the prosecution’s clear and repeated statements that the defense was required to provide “competent, admissible evidence” w$re “egregious misstatements.” These misstatements went *1082 beyond misstating facts — they instructed the jury to require that Demirdjian provide evidence to counter the prosecution’s ease. The prosecution first framed for the jury an analytical approach that required the defense to “attack the case with real evidence, with competent evidence.” Mathews’s failure to object, and the court’s silent acquiescence in the prosecution’s demand, said one thing to the jury: You may find the defendant guilty if he did not provide evidence to refute the prosecution’s case.
Defense attorneys may refrain from objecting for a wide variety of reasons, including a desire to avoid calling attention to unfavorable facts. See id. (“[Defense counsel’s] decision not to object to [the prosecutor’s] comments, possibly to avoid highlighting them, was a reasonable strategic decision.”). No reasonable jurist could conclude that counsel’s failure to object to clear instructions by the prosecution to the jury that shifted the burden of proof onto the defense falls within the “wide range of professional legal conduct.” To be sure, withholding objection might be a reasonable strategy in the context of isolated errors or otherwise harmless commentary. See id. Here, however, it would have been readily apparent to any reasonable counsel after the first several burden-shifting statements that such improper commentary would not cease and, as a result, would be highly prejudicial to the client.
Similarly, Demirdjian’s counsel sat through the prosecution’s repeated Griffin violations yet failed to object despite numerous opportunities to do so. While in some cases we have recognized the strategic value in forgoing objection during opposing counsel’s closing argument, such a tactic would have been unreasonable here after the prosecution’s first several requests for information exclusively within Demirdjian’s knowledge, and grossly unreasonable upon counsel’s discovery that the prosecution’s strategy in its closing arguments was apparently to underscore Demirdjian’s decision not to testify. See id. Yet defense counsel said not a word.
Defense counsel’s failure to respond to the prosecution’s statements was not a strategic decision taken to avoid highlighting unfavorable facts. The failure to object permitted the prosecution to lower its burden of proof by shifting the burden onto the defense, highlighted Demirdjian’s choice not to testify, and allowed the prosecution to pander to the jury’s heightened sensibilities. No possible defense strategy could explain these failures.
IV
We may not grant habeas relief unless counsel’s failure satisfies Strickland’s second prong, such that the prosecution’s comments resulted in prejudice to the defendant. Zapata, 788 F.3d at 1116-17. Under Strickland, “the likelihood of a different result [absent counsel’s deficient performance] must be substantial, not just conceivable.” Richter, 562 U.S. at 112, 131 S.Ct. 770. On habeas review, the question is whether it would have been unreasonable for a state court to have concluded “[the defense’s] evidence of prejudice fell short of this standard.” Id.
“[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.” Strickland, 466 U.S. at 696, 104 S.Ct. 2052. Considering “the totality of the evidence,” id. at 695, 104 S.Ct. 2052, absent counsel’s ineffective performance, there is a reasonable probability that at least one juror would have resisted a guilty verdict, just as four jurors did in Demirdjian’s first trial. See Vega v. Ryan, 757 F.3d 960, 974 (9th Cir. 2014) (finding Strickland prejudice because of “a reasonable probability that at *1083 least one juror would have struck a different balance” (citation and quotation marks omitted)).
This is not a case where the evidence of the defendant’s guilt was otherwise overwhelming. The most significant weakness in the prosecution’s case was its inability to establish a plausible motive. The prosecution permissibly asked the jury to apply its common sense as it analyzed the case, yet the prosecution’s theory of Demirdji-an’s motive defied any reasonable application of common sense. According to the prosecution, Demirdjian and Damian Kim, angered by being robbed in a drug deal by nineteen-year-old Adam Walker, spent a week unsuccessfully trying to ambush Walker to recover their money and exact revenge. Their chosen weapons: “beebee guns and knife, simulated weapons.” But then, according to the prosecution, when Demirdjian’s attempts to ambush Walker failed, he decided to turn on his own friends, Chris McCulloch and Blaine Tai-mo, in an attempt to rob them of $200. During the course of this robbery, the prosecution alleged, Demirdjian beat the two boys to death. Demirdjian supposedly put aside the beebee guns and knife and simulated weapons, and instead used his fists and a rock and a park bench to bludgeon Chris and Blaine, simply because they were younger and more vulnerable. It is no small wonder the prosecution repeatedly emphasized that it was not required to prove motive to the jury.
Several problems with the physical evidence linking Demirdjian to the murders also highlight the weakness of the prosecution’s case. It was only after several inconclusive attempts and a tip from Blaine Talmo’s stepmother that the officers connected Demirdjian to the crime using dog scent evidence. Ultimately, however, the defense’s expert discredited this evidence as likely having been influenced by the dog handlers’ own methodological errors. What is more, the defense identified deficiencies in the State’s initial DNA testing, which failed to implicate Demirdjian at all.
Finally, the jury heard evidence implicating Walker as the murderer, consistent with the defense’s narrative. Blood was found on Walker’s shoes and he had scrapes on his hands, arms, and back, and bruises on his leg. Incriminating evidence was found at Walker’s residence, including washed rugs, damp and discolored clothes, gloves, a hand towel, and a newspaper article about the crimes. ¡Evidence also suggested that Walker had told his friend about the murders several hours before the police discovered the victims’ bodies.
No reasonable jurist could dispute the substantial weaknesses in the prosecution’s case. These weaknesses explain the jury’s difficulty in reaching a verdict at both of Demirdjian’s trials. As a result, there is a reasonable probability that trial counsel’s failure to object to the prosecution’s highly improper attempts at burden shifting, multiple Griffin errors, and pleas to the jurors’ passions influenced the jury’s verdict. Fairminded jurists could not disagree.
í]í sfs ‡ j-j # ‡
I would reverse the district court’s denial of Demirdjian’s habeas petition and remand with instructions to grant a writ requiring the State to release him from custody unless it initiates new trial proceedings within a reasonable period of time as determined by the district court.