NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 6 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARLON EVANS
                    Petitioner-Appellant,

    v.

AMY MILLER, Warden,

                    Respondent-Appellee.

No.    13-55087

D.C. No.
2:98-cv-08536-WDK-MLG

**MEMORANDUM**[*]

Appeal from the United States District Court
for the Central District of California
William D. Keller, Senior District Judge, Presiding

Argued and Submitted December 11, 2020
Pasadena, California

Before:  N.R. SMITH and LEE, Circuit Judges, and KENNELLY,[**] District Judge.
Partial Concurrence and Partial Dissent by Judge KENNELLY

    Marlon Evans appeals the district court's dismissal of his 28 U.S.C. § 2254

habeas petition. He also asks us to remand his case to the district court for an

evidentiary hearing on the viability of his "actual innocence" and *Brady* claims.  We

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.
    [**]    The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

have jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2253. We affirm the judgment of the district court and deny Evans's motion for remand.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), we review de novo a district court's denial of a habeas petition. *See Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). But de novo review of claims already adjudicated on the merits by a state court are permitted only where the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Here, the California Supreme Court summarily denied Evans's due-process and ineffective-assistance-of-counsel claims. Therefore, as to these issues, Evans "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the California Supreme Court's [summary] decision." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)). Thus, we "must determine what arguments or theories could have supported the state court's decision; and then [we] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]."

2

*Id*. The California Court of Appeal also denied Evans's misjoinder-of-charges claim in a reasoned opinion, after which the California Supreme Court denied review without comment. As to the misjoinder-of-charges claim, we "'look through' the [California Supreme Court's] unexplained decision and presume that the unexplained decision adopted the same reasoning" as the California Court of Appeal. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1992 (2018). Thus, absent a showing the California Supreme Court relied on different grounds, we review "the specific reasons given by the state court and defer[] to those reasons if they are reasonable." *Id*.

1. <u>Due Process:</u> The California Supreme Court summarily denied Evans's claim that identification procedures employed by the police and prosecution with witness Leroy Martin violated his due process rights. Evans argues that the identification procedures were unnecessarily suggestive because: (1) he was the only person in the arrays whose photo appeared twice; (2) the picture of him with a beanie was chosen to ensure an identification consistent with the witness's statement; and (3) only three of the "suspects" in the photo array wore beanies. He argues that this parallels the unconstitutionally suggestive identification procedures in *Foster v. California*, 394 U.S. 440, 442 (1969).

We cannot say that the "state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing

3

law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Unlike in this case, *Foster* involved two suggestive lineups – including one in which the petitioner stood out because of his height and clothing – and a one-on-one confrontation, which "made it all but inevitable that [the witness] would identify [the] petitioner. *Foster*. 394 U.S. at 442-43. *See also Stovall v. Denno*, 388 U.S. 293, 302 (1967) (describing one-on-one confrontations as "widely condemned"). Evans's photo arrays contained similar-looking individuals, and the lineup only contained men of similar height, build, and appearance. Evans's identification procedures do not resemble any of the examples provided by the Supreme Court in *United States v. Wade*, 388 U.S. 218, 233 (1967) or any of the Court's other decisions. Consequently, fairminded jurists, like the members of the California Supreme Court, could disagree as to the suggestiveness of the identification procedures.[1]

2. <u>Ineffective assistance of counsel:</u>  The district court did not err in denying Evans's ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1983).  To prevail, Evans must prove that the performance of his trial counsel was deficient, and that the deficiency prejudiced his defense.  *Strickland*, 466 U.S. at 687.  He cannot demonstrate either.  As noted, the California Supreme

---

[1] Because there is a reasonable basis to conclude that the identification procedures were not impermissibly suggestive, we need not address Evans's additional due process arguments.

4

Court's denial of Evans's suggestive identification claim was not unreasonable. Thus, the California Supreme Court's denial of Evans's ineffective assistance of counsel claim was also not unreasonable. The state court could have reasonably concluded that the trial counsel's decision not to object to the identification procedures (used by the police with Martin) was not unconstitutionally deficient, because the procedures were not "impermissibly suggestive" or that "under the totality of the circumstances, the identification was . . . reliable." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2560 (2018) (internal quotation marks omitted) (quoting *Neil v. Biggers*, 409 U.S. 188, 199 (1972)). As this court put it, a lawyer's "failure to make a futile motion does not constitute ineffective assistance of counsel." *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994).

Additionally, both of the prosecution's witnesses, Leroy Martin and Clarence Lavan, inconsistently described the suspect, including at trial. At trial, Evans's counsel could have made the strategic choice to rely on these potential inconsistencies, rather than contest the identification process. A fairminded jurist could agree with the tactical merits of this approach, further undermining Evans's claim.

Inconsistences tend to create doubt, a defense lawyer's best friend. Certainly, counsel could have made the strategic choice to challenge the identification process. As the dissent notes, a good lawyer might have made a challenge. But counsel could

have instead decided to rely on the inconsistencies between Martin's and Lavan's accounts to introduce reasonable doubt about whether Evans was the shooter that the latter saw. Indeed, by introducing the two accounts, which shared only a description of the suspect's hat and pants, Evans's counsel gave the jury reason to second guess the credibility of the witnesses' identifications.

Ultimately, a habeas petition is not the appropriate vehicle to second-guess litigation strategy. Instead, we apply the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688. Hence, the only question properly before us is whether declining to contest an identification process to introduce discreditable witnesses' testimony can be "the result of reasonable professional judgment." *Id*. at 690. We conclude that it can.

Finally, even if trial counsel's failure to object to the identification procedures was deficient, Evans failed to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Notably, Martin was one of two eyewitnesses to identify Evans at trial, and the other eyewitness, unlike Martin, identified Evans as the shooter. Thus, there is not a "reasonable probability" that the absence of Martin's testimony would have resulted in a different outcome. *See Harrington*, 562 U.S. at 104, 112 ("The likelihood of a different result must be

6

substantial, not just conceivable"). *See also Premo v. Moore*, 562 U.S. 115, 124, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011) (identifying "the relevant question under *Strickland*" as whether a "competent attorney would think a motion . . . would have failed," and explaining that, if "suppression would have been futile . . . his representation was adequate under *Strickland*, or at least. . . it would have been reasonable for the state court to reach that conclusion").

3. Misjoinder of charges:  The state court's rejection of Evans's misjoinder-of-charges claim was not contrary to, or an unreasonable application of, federal law. The California Court of Appeal considered, and rejected, Evans's misjoinder-of-charges claim in an opinion relying on state and federal law.  *See also Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010) (explaining that the Supreme Court has not clearly established that misjoinder could rise to the level of a constitutional violation" (citing *United States v. Lane*, 474 U.S. 438 (1986)).  The Court of Appeal reasoned that, because the jury did not convict Evans for attempted murder, joinder did not prevent the jury from weighing the evidence separately.

The state court also applied the correct prejudice analysis under federal law. *See Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("There is no prejudicial constitutional violation unless 'simultaneous trial of more than one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process").  Likewise, the California Court of Appeal considered the

7

appropriateness of the joinder at multiple phases of the trial. Nevertheless, it found no evidence of prejudice.

4. <u>Motion for remand:</u> Under 28 U.S.C. § 2106 a "court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." But a motion for indicative ruling and relief from judgment cannot be appealed. *See Defenders of Wildlife v. Bernal*, 204 F.3d 920, 930 (9th Cir. 2000) ("A district court order declining to entertain or grant a Rule 60(b) motion is a procedural ruling and not a final determination on the merits . . . [b]ecause there is no final judgment on the merits, the underlying issues raised by the 60(b) Motion are not reviewable on appeal") (citation omitted). Here, Evans filed a Rule 60(b) motion with the district court submitting new evidence and asserting his innocence. Evans's § 2601 motion is nothing more than an improper attempt to appeal the 60(b) ruling. Without an appealable final judgment on the merits, we lack jurisdiction to entertain Evans's motion.

Further, Evans cannot resort to the "actual innocence gateway" as established in *Schlup v. Delo*, 513 U.S. 298 (1995), because the district court already heard Evans's claims and evidence. *See Detrich v. Ryan*, 740 F.3d 1237, 1248 (9th Cir.

2013) (recognizing "[a] standard practice . . . to remand to the district court for a decision in the *first instance*") (emphasis added). *See also Bousley v. United States*, 523 U.S. 614, 623 (1998) (remanding because the district court "failed to address petitioner's actual innocence, perhaps because [he] failed to raise it initially in his § 2255 motion"); *Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2002) (remanding because the district court failed to consider petitioner's properly raised *Schlup* claim). There has been no change in controlling law, and, without one, Evans cannot relitigate his petition. *Id*. at 1242.

**AFFIRMED**.



*Evans v. Miller*, No 13-55087
KENNELLY, District Judge, concurring in part and dissenting in part:

Marlon Darrel Evans was sentenced to life imprisonment for a quadruple murder that there is a very good chance he did not commit. There was no confession or physical evidence connecting him with the crime. Evans's conviction was based in significant part on the testimony of an eyewitness who said he was "75 percent sure" that Evans was a person he saw at the crime scene— and not with a weapon. Despite this conceded uncertainty and evidence of suggestive tactics by the police, Evans's trial counsel did not move to exclude the witness's identification. The majority holds that the state court acted reasonably in rejecting Evans's claim of ineffective assistance of counsel based on this failure. I respectfully disagree. Any reasonable criminal defense attorney would have challenged the admissibility of this testimony. Because I believe that the California Supreme Court's rejection of this claim was unreasonable, I would reverse.

## BACKGROUND

**A.     Offense conduct and police investigation[1]**

---

[1] These facts are drawn from the opinion of the California Court of Appeal and from the state trial court transcripts, which are presumed correct. *See Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008).

1

On December 13, 1992, Henry Broomfield and Donta Bavis, members of the Six Eight faction of the Crips gang, drove into a Los Angeles gas station located in the territory of the Six Deuce faction, with which the Six Eights were feuding. Evans was a Six Deuce. Several "regulars" were at the gas station, including Leroy Martin and Clarence Lavan. Martin saw a man walking around before Broomfield and Bavis arrived; he said the man walked to the gas station from a nearby alley, stood in front of the cashier's window, surveyed the scene, and returned to the alley.

Lavan then saw a man with an AK-47 rifle begin to shoot at Bavis's car. Bavis got into the car and sped off with Bloomfield as the man continued shooting. Bavis was injured, and Bloomfield was killed, as were three bystanders. The man with the AK-47 fired at Lavan, but he was not injured. Lavan saw the man run from the gas station to a burgundy SUV that was in an alley.

Several hours after the shooting, Martin provided police an account of what he had seen. Weeks later, Martin was shown several photo arrays. Two of them (the first and sixth) included Evans's photo; Evans was the only person whose photo appeared twice. Martin did not identify Evans's photo from the first array. He did choose Evans's photo from the sixth array, which showed Evans wearing a beanie, saying he was "75 percent sure" that Evans was the person he had seen. Later, during a live lineup, Martin failed to identify Evans and, on his witness

2

admonition card, wrote "none" when asked for the position of the suspect. However, in the remarks section of the card, Martin wrote that "number five," Evans, "came the closest" to the man he observed at the gas station. At trial, Martin stated that he didn't identify Evans as the suspect because he didn't see Evans holding a gun.

Police interviewed Lavan and recorded the interview. Lavan was also shown photo arrays. In one of them, Evans was wearing a beanie (Lavan told officers that the shooter wore a hat of this type). After viewing the first array, Lavan identified Evans as the shooter, but then hedged, saying that he "looks like the guy." (Lavan has since recanted his identification of Evans.) He asked the detectives if they had "one with a beanie"; one detective said yes. After Lavan expressed concern for his and his family's safety, authorities agreed to relocate them and provide other assistance. Later in the same interview, officers showed Lavan another array in which all six of the men were wearing something on their heads, three (including Evans) with beanies. Lavan chose Evans's photo, saying that he didn't know if this photo and the earlier photo were of "the same people" and that he "couldn't identify him without the hat."

## B.    Evans's Trial

Lavan was unavailable to testify at Evans's trial, so his testimony from the preliminary hearing, in which he identified Evans as the shooter, was read into the

3

record.  This included significant impeachment based on the circumstances recounted above.

Martin identified Evans as the man he had seen at the gas station (without a gun).  He stated that he did not see the shooter and was only 75 percent sure that he saw Evans that evening.  Martin testified that he wrote "none" on his lineup identification card because "I wasn't a hundred percent sure that that was him.  I said he looked like him."  "I seen someone that looked like him.  I don't know if that was him or not."  When trial counsel asked Martin if he ever saw a weapon in the defendant's hands, Martin repeated, "No, no, no.  No, no, I didn't."

The jury found Evans guilty of two counts of first-degree murder, two counts of second-degree murder, and one count of possession of a short-barreled rifle.  He was sentenced to life imprisonment without possibility of parole, plus 108 years.

## C.    Post-conviction history

Evans appealed his conviction to the California Court of Appeal, which affirmed his conviction.  His petition for certiorari to the California Supreme Court was denied.  State collateral review was similarly unhelpful to him.  Next, Evans filed a petition for writ of habeas corpus with the California Supreme Court, which was denied.

In 1998, Evans filed a habeas petition in federal court, which a district judge dismissed because it contained both exhausted and unexhausted claims. His habeas petition was reinstated by the district court in October 2011 due to changes in Ninth Circuit precedent. The district court denied the petition with prejudice in late 2012. Regarding Evans's ineffective-assistance-of-counsel claim, the district court held that the trial counsel was not ineffective because Martin's in-court identifications weren't tainted and a motion to suppress them would have been futile. This court granted a certificate of appealability and appointed counsel to represent Evans. Counsel have thoroughly reinvestigated the case from top to bottom.

## DISCUSSION

As the majority states, issuance of a writ of habeas corpus on a claim already adjudicated on the merits by a state court is allowed only where the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

I focus here on Evans's Sixth Amendment claim of ineffective assistance based on his trial counsel's failure to challenge the admission of Martin's

5

identification.  On a § 2254 petition, judicial review of a claim under *Strickland* is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Id.* (internal quotation marks omitted).

Because the California Supreme Court offered no reasons for denying Evans's claim, we must "conduct an independent review of the record to determine what arguments or theories could have supported" its decision.  *See Bemore v. Chappell*, 788 F.3d 1151, 1161 (9th Cir. 2015) (alterations accepted) (internal quotation marks omitted).  And because Evans argues that the state court's decision was an unreasonable application of Supreme Court precedent, we must also determine whether "the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but objectively unreasonable."  *Larson v. Palmateer*, 515 F.3d 1057, 1061 (9th Cir. 2008) (internal quotation marks omitted).

To establish an ineffective assistance claim, a habeas petitioner must demonstrate that the attorney's performance was deficient and that this prejudiced his defense.  *Andrews v. Davis*, 944 F.3d 1092, 1108 (9th Cir. 2019).  "The

ultimate focus . . . is the fundamental fairness of the proceeding whose result is being challenged." *Id.* (internal quotation marks omitted).

## A.    Ineffective Assistance—Counsel's Performance

To meet the performance element, the petitioner must establish that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; . . . the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks omitted).

The Supreme Court has long recognized that the Due Process Clause requires the exclusion of evidence of a pretrial identification of the defendant when, based on the totality of the circumstances, the identification procedures: (1) were both "suggestive and unnecessary"; and (2) "created a substantial likelihood of misidentification." *See Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012). (internal quotation marks omitted); *see also Neil v. Biggers*, 409 U.S. 188, 198 (1972) ("Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.").

This court has recognized that "[w]hen faced with a client who has been identified in an illegal line-up, most defense attorneys would challenge the admission of any evidence related to it." *Tomlin v. Myers*, 30 F.3d 1235, 1237–38 (9th Cir. 1994)[2]; *see also Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005) (holding that trial counsel's failure to move to suppress pre-trial identification was unreasonable and lacking in sound trial strategy). "After all, a defendant arguably has everything to gain and nothing to lose in filing a motion to suppress, especially one involving an identification by the sole eyewitness to the crime." *Tomlin*, 30 F.3d at 1238 (alterations accepted) (citations and internal quotation marks omitted).

With the above framework in mind, even applying the "strong presumption" that *Strickland* requires, I cannot think of a single plausible strategic basis that could support Evans's counsel's failure to object to the admission of Martin's identification. This is especially so because the trial essentially "hinge[d] on an eyewitness's testimony." *See id.* I disagree with the majority's contrary conclusion because, in my view, it is premised upon a number of erroneous determinations.

---

[2] "While Supreme Court precedent is the only authority that is controlling under AEDPA, [this court views its] case law as persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (internal quotations mark omitted).

To start with, the majority concludes that a motion by Evans's trial counsel to exclude Martin's pre-trial and in-court identifications would have been futile given that the state supreme court's summary rejection of the suggestive-identification claim was not unreasonable.[3] *See* Majority Op. 5, 7. This incorrectly elides two separate questions. The fact that there is room for fair-minded jurists to disagree about the admissibility of Martin's identification does not mean that a motion to exclude the identification was futile, doomed to fail, or anything of the kind. A federal court's determination that a state court decision was not unreasonable is *not* a determination of the merits; it's one step removed. Thus, the fact that we have rejected Evans's suggestive-identification-procedures claim cannot, on its own, provide the basis for rejecting the ineffective assistance claim.

Next, the majority posits that "Evans's counsel could have made the strategic choice to rely on [ ] potential inconsistencies [between Martin's and Lavan's] identifications rather than contest the identification process" and that "[i]nconsistencies tend to create doubt, a defense lawyer's best friend." Majority Op. 6. There are two problems with this, each of which in my view undermines the majority's point.

---

[3] The district court offered similar reasoning.

First, the majority's hypothesis that counsel could have made a strategic choice not to seek exclusion of Martin's identification in favor of pointing out inconsistencies between that identification and Lavan's does not withstand scrutiny. It is certainly true that in cases like this one, where the state court never held a hearing or actually engaged with the merits of an ineffective assistance claim, a federal court reviewing a habeas corpus petition may (or must) attempt to hypothesize plausible strategic reasons why trial counsel acted or failed to act. But one would expect a hypothetical strategic reason to have some basis in the record. Here there is none: Evans's trial counsel *did not* argue inconsistencies between the two witnesses' descriptions to the jury. There was no mention of this point— none—in counsel's closing argument. It cannot possibly make sense to uphold a state court's ruling based on a hypothesized strategic choice that is affirmatively contradicted by the record.

Second, even if one disregards what I have just stated, and assuming there were meaningful inconsistencies between the witnesses' descriptions of the shooter, the failure of Evans's trial counsel to seek to exclude Martin's identification could not possibly have been a strategic choice based on "the result of reasonable professional judgment." *See Strickland*, 466 U.S. at 690. Aside from Martin's identification, the only evidence implicating Evans was preliminary hearing testimony by Lavan that was read into the record along with its

10

impeachment, and Evans's membership in a gang. Evans's trial counsel plainly realized this; he acknowledged to the jury that this case was "one obviously of identity," and he argued to jurors that Martin was mistaken.

If Evans's defense at trial was that he was wrongly identified, what tactical basis could there be not to challenge the identification and testimony of Martin, the only live witness who identified him? There is no question that such a motion would have been colorable: (1) Martin was only 75 percent certain that Evans was the man he saw; (2) detectives placed Evans's photo, and only his photo, in two separate arrays—with Martin identifying him only in the second array; (3) the picture Martin chose was taken so that it would match a description of the shooter (who wore a beanie); and (4) at the lineup, when Martin was seeing Evans for the third time during an identification procedure, he was able to say only that Evans came closest to the man he had seen before the shooting. Evans and his counsel had "everything to gain and nothing to lose in filing a motion to suppress." *See Tomlin*, 30 F.3d at 1238 (alterations accepted) (citations and internal quotation marks omitted).

The majority says that "[i]nconsistencies tend to create doubt, a defense lawyer's best friend." Majority Op. 6. With respect, this misstates the point. The real issue is how doubt is shown. The majority seems to be saying that having two identification witnesses with some inconsistencies in their descriptions is somehow

11

better for a defendant than a single identification witness whose testimony, as in this case, can be impeached. I cannot imagine a reasonably competent defense lawyer who would agree with that. If defense lawyers have a best friend, it is less or no evidence on a critical point, not inconsistencies.

*    *    *

The *Strickland* reasonableness determination is case-specific. I do not believe there was or is a reasonable strategic basis *in Evans's case* for not challenging the admissibility of Martin's identification. Without this, "the failure to bring to the court's attention a major constitutional error in the prosecution's case is not the product of reasonable professional judgment." *See Tomlin*, 30 F.3d at 1239.

## B.　Ineffective Assistance—Prejudice

To prove prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

I believe there is a reasonable probability a motion to suppress would have prevailed had trial counsel filed one. An identification procedure is suggestive where it "[i]n effect . . . sa[ys] to the witness '*This* is the man.'" *Foster v.*

12

*California*, 394 U.S. 440, 443 (1969). At least two procedures would have supported a challenge to Martin's identification as impermissibly suggestive: (1) the detectives' placement of Evans's photo, and only his photo, in two separate arrays, and (2) the picture Martin chose was taken so that it would match a description of the shooter (who wore a beanie). Both of those procedures are arguably similar to tactics deemed impermissible in *Foster*. *See id.* at 442–43. The State argues that Martin's identification would survive a totality-of-the-circumstances inquiry, but two facts make that unlikely: (1) Martin was only ever 75 percent certain when he saw Evans's photo with the beanie and could not make a positive identification when he saw Evans in person at the lineup; and (2) the length of time between the commission of the crime and Martin's identification.

Of course, "reasonable probability" in this context is more than the likelihood that Evans would have succeeded on the motion to suppress Martin's identification; it also concerns the likelihood that the trial would have come out differently. Evans clears this bar too. Although Martin was not the prosecution's sole witness, this case arguably hinged on his identification and related testimony. Again, Lavan did not testify live at Evans's trial. It was Martin the jury saw questioned, Martin whose credibility they were able to evaluate based on first-hand observation, and Martin whose testimony was the only evidence to corroborate the cold transcript of Lavan's preliminary hearing testimony. And in addition to

13

hearing Lavan's testimony from the preliminary hearing, the jury heard his admission of doubts during his recorded interview and the promises authorities made to obtain his cooperation. With all this in mind, I agree with Evans that, absent Martin's corroborating testimony, there is a reasonable probability that one or more jurors would have had reasonable doubt of Evans's guilt.

## CONCLUSION

For the foregoing reasons, I would hold that the California Supreme Court unreasonably applied clearly established federal law in concluding that Evans's counsel was constitutionally adequate. I concur with the majority in all other respects.